IN THE MATTER OF THE ESTATE OF LEONARD J. DUSSELL, SR., DECEASED. DENNIS DUSSELL, APPELLANT, v. MARY JANE DOUGHERTY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 3, 1976—Decided December 7, 1976.

Before Judges LYNCH, MILMED and ANTELL.

*Messrs. Maressa, Daidone & Wade,* attorneys for appellant (*Mr. Sal B. Daidone* on the brief).

*Messrs. Avena and Hendren,* attorneys for respondent (*Mr. James R. Hendren* on the brief).

The opinion of the court was delivered by

LYNCH, P. J. A. D. Dennis Dussell, a child born out of wedlock to Winona "Dussell" and Leonard J. Dussell, Sr., deceased, appeals from a judgment which held that since his parents never married, *N. J. S. A.* 3A:4–7 did not entitle Dennis to share by intestate succession in the estate of his putative father or to receive letters of administration for that estate. The trial judge also rejected his contention that *N. J. S. A.* 3A:4–7 was unconstitutional. Defendant appeals this ruling.

Trial counsel for Dennis apparently was not aware of the provisions of *N. J. S. A.* 2A:34–20. For the first time on

appeal appellate counsel now additionally contends that said statute effected legitimation of Dennis by reason of an alleged common law marriage between Winona and Leonard in Pennsylvania.

We agree with the trial judge's decision that *N. J. S. A.* 3A: 4–7 is constitutional. *Labine v. Vincent,* 401 *U. S.* 532, 91 *S. Ct.* 1017, 28 *L. Ed.* 2d 288, reh. den., 402 *U. S.* 990, 91 *S. Ct.* 1672, 29 *L. Ed.* 2d 156 (1971). However, since the judge did not consider the effect of *N. J. S. A.* 2A:34–20, we must do so here. Since trial counsel for Dennis was unaware of the provisions of that statute, there was no testimony taken as to whether Winona and Leonard had in fact entered into a common law marriage in Pennsylvania. Therefore, we will assume *arguendo* that there was such a marriage in order to consider the issue of whether the statute would legitimate Dennis if such marriage existed.

*N. J. S. A.* 2A:34–20 in its current revised form was a corollary to the passage of the 1971 Divorce Reform Law. It reads as follows:

A child heretofore or hereafter born of parents who prior or subsequent to the birth of such child have entered into a civil or religious marriage, or shall have consummated a common-law marriage where such marriage is recognized as valid, in the manner authorized by the law of the place where such marriage takes place, is the legitimate child of both natural parents notwithstanding that such marriage is void or voidable or has been or shall hereafter be annulled or judicially declared void.

Nothing in this amendatory act shall be deemed to affect the construction of any will or instrument heretofore executed or any property right or interest or right of action vested or accrued or to limit the operation of any judicial determination containing an express provision or provisions with respect to the legitimacy, maintenance or custody of any child, or to affect any adoption proceeding heretofore commenced, or limit the effect of any judgment or order entered in such adoption proceedings.

The alleged common law marriage between Winona and Leonard was entered into in the State of Pennsylvania. Since that state recognizes common law marriages, Dennis claims he is legitimated by the operation of the statute and there-

fore is entitled to share in his father's estate and to be granted letters of administration therein. Respondent, a legitimate child of Leonard and his previous wife Margaret, seeking to administer her father's estate, points out that it is stipulated between the parties that any alleged union between Winona and Leonard was bigamous because neither Winona nor Leonard had been divorced from their previous spouses. With respect to this contention Dennis argues that he is legitimated by a common law marriage in Pennsylvania, as the statute says, "notwithstanding that such marriage is void," and therefore, even if the said marriage was bigamous, he is not deprived of the benefit of the statute.

██ It is irrefutable that our court have construed statutes pertaining to legitimation of children quite liberally in order to spare children who are innocent of any wrongdoing from being burdened with the stigma of illegitimacy.

*In re Calogero,* 51 *N. J.* 345 (1968), construed that paragraph of *N. J. S. A.* 3A:4–7, which provides that an illegitimate child is deemed a legitimate child of both parents when his parents "marry" subsequent to his birth and recognize and treat him as their child, to be applicable even though the marriage is bigamous. In doing so the court read that statute together with the predecessor of the current *N. J. S. A.* 2A:34–20 (when the statute required a ceremonial marriage by the parents in order to legitimate a child born out of wedlock) and with *N. J. S. A.* 9:15–2. Of those two statutes the court said:

Section 3A:4–7 must be read in conjunction with *N. J. S. A.* 9:15–2 and *N. J. S.* 2A:34–20 which provide that a child born of a void ceremonial marriage is legitimate.[2] These two statutes make clear

---

[2] *N. J. S. A.* 9:15–2 (dealing generally with legitimacy) provides: "Any child heretofore or hereafter born of a ceremonial marriage is the legitimate child of both parents notwithstanding the marriage be thereafter annulled or declared void. Such child shall enjoy the status and rights to which he would have been entitled had he been born of a valid marriage."

that the Legislature did not intend a child's legitimacy to turn upon the validity of his parents' marriage, even if bigamous, so long as the marriage was ceremonial. See *Capraro v. Propati*, 127 *N. J. Eq.* 419 (*E. & A.* 1940), holding that under those statutes children born after their parents' bigamous ceremonial marriage were legitimate; cf. *Endres v. Grove*, 34 *N. J. Super.* 146 (App. Div. 1955).

Thus, the ceremonial marriage of Joseph's parents, though bigamous, would have been effective under *N. J. S. A.* 9 :15–2 and *N. J. S.* 2A :34–20 to render legitimate any child born subsequent to that marriage. In light of this legitimating effect ascribed to such marriage by the Legislature, we conclude that the bigamous marriage of Joseph's parents, though otherwise void, was sufficient to satisfy the marriage requirement of *N. J. S.* 3A :4–7. Had the marriage of Joseph's parents been valid, it would have made him legitimate even though his birth preceded the marriage. *N. J. S.* 3A :4–7; *N. J. S. A.* 9 :15–1. Had he been born after the marriage of his parents, he would be legitimate even though the marriage was bigamous and therefore void. *N. J. S. A.* 9 :15–2; *N. J. S.* 2A :34–20; *Capraro v. Propati, supra*. Considering the operation of the statutes in these instances, it would be illogical to deny Joseph the benefit of them under the facts in this case. We can see no reason in the statutory scheme why a child born before his parents' bigamous marriage should not have the same status as would his brother, born after that marriage. The child born before such a marriage is no more culpable for his parents' transgressions than is his after-born brother. It would be repugnant to the liberal tenor of our legitimacy statutes for the stigma and disabilities of bastardy to result merely from the fortuity of the child's birthdate. Our legitimation statutes were enacted for the humane purpose of meliorating the harsh common law rules; in determining the statutory meaning, weight must be given to the public policy favoring legitimacy embodied in our legislative design. [51 *N. J.* at 349–350 (1968) ]

■ In *Calogero* the court expressly approved the opinion of Judge Matthews in *L. v. L.*, 92 *N. J. Super.* 118 (Ch. Div. 1966), which held that children deemed legitimated by a subsequent void, bigamous ceremonial marriage would take under the laws of descent and distribution. In both of those

---

*N. J. S.* 2A :34–20 (Divorce and Nullity) reads:

"A judgment of nullity of marriage shall not render illegitimate the issue of any marriage so dissolved, except in a case where the marriage, *not being a ceremonial one*, is dissolved because either party had another wife or husband living at the time of a second or other marriage. In such a case the marriage shall be deemed void ab initio, and the issue thereof shall be illegitimate." (Emphasis added)

cases the court was concerned with a ceremonial marriage, whereas here our attention is drawn to a possible common law marriage in the State of Pennsylvania. We do not conceive that the distinction should alter the liberal construction customarily given to legitimacy statutes. Just as the Supreme Court in *Calogero* held that the Legislature did not intend that a child's legitimacy was to turn on the *validity* of the parents' marriage, even if bigamous, neither can such intent be found in the Legislature's reference to a common law marriage consummated in the manner authorized by the law of the place where such marriage takes place. Even if Pennsylvania does not recognize such a bigamous common law marriage as valid (*Wydra v. Philadelphia and Reading Coal and Iron Co.*, 153 Pa. Super. 529, 34 A. 2d 326 (Super. Ct. 1943)), New Jersey recognizes the act of entering into such a contract as an act which legitimates the child. We therefore conclude that, if such marriage existed, Dennis will be legitimated "notwithstanding such marriage is void." *N. J. S. A.* 2A:34–20.

Accordingly, the matter is remanded to the trial court for the taking of proofs as to whether Winona and Leonard did enter into a common law marriage in Pennsylvania and for findings of fact and for conclusions thereon in accordance with the views expressed in this opinion.

We do not retain jurisdiction.