Cynthia MENDOZA, etc., et al.,
Plaintiffs, Appellants,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 80–1461.

United States Court of Appeals,
First Circuit.

Submitted Oct. 23, 1980.

Decided July 20, 1981.

Florencio G. Vega Diaz and Rafael Carreras Valle, Rio Piedras, P.R., on brief for plaintiffs, appellants.

Alice Daniel, Asst. Atty. Gen., Washington, D.C., Julio Morales-Sanchez, U.S. Atty., Ramon L. Walker-Mereno, Asst. U.S. Atty., San Juan, P.R., Randolph W. Gains, Chief of Litigation, and Natalie R. Dethloff, Atty., Dept. of Health and Human Services, Washington, D.C., on brief for defendant, appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Cynthia Mendoza, a minor, acting through her representative, applied in March of 1976 for child's insurance benefits under section 202(d) of the Social Security Act, 42 U.S.C. § 402(d). After her claim had been denied originally and upon reconsideration, it was heard by an administrative law judge (ALJ). The adverse decision of the ALJ became the final decision of the Secretary when approved by the Appeals Council on March 5, 1979. Review was sought in the United States District Court for the District of Puerto Rico. This appeal is from the district court's decision affirming the Secretary's denial of benefits.

I.

Claimant was born on July 13, 1974. She alleges that she is the daughter of Delfin Rivera Rivera. The record before the ALJ shows, in substance, the following. In January of 1973 Carmen Mendoza, mother of the claimant, met and began a relationship with Delfin Rivera. Rivera was then married to another, and remained so until his death on January 6, 1974. In February of 1973 Carmen Mendoza married Alcides Laureano, ostensibly to help him leave the Dominican Republic where he was in political trouble. The newly married couple may never have lived together, and did not in any event live together after May of 1973. Divorce proceedings between Mendoza and Laureano were begun in September of 1973 and concluded in January of 1974. It has been decided in the Puerto Rico courts that Laureano is not the father of the present claimant.

There is evidence that Mendoza and Rivera were living together at Mendoza's house throughout 1973. Four neighbors gave statements indicating that Rivera stayed at Mendoza's house all night on a regular basis. The field investigator for Social Security reported that the couple were presumed by their neighbors to be husband and wife and Mendoza spoke of Rivera as her husband. When Ms. Mendoza required emergency hospitalization, Rivera took her to the hospital, and on the hospital's form guaranteed payment of the bill and used her address.

After meeting Rivera, Mendoza quit her job, allegedly at his request, and Rivera paid Mendoza $125 a week or more during the relationship. One witness, Manuel Figueroa Jimenez testified that at Rivera's request he made such payments to Mendoza while Rivera was hospitalized for several weeks.

Ms. Mendoza's testimony was that she had sexual relations with Rivera and with

no one else between February, 1973 and December, 1973. Around October, 1973 Ms. Mendoza became pregnant. Her mother and aunt and a neighbor all testified that Rivera had made statements to them indicating that he was the father of the expected child.

Upon learning of the pregnancy on December 24, Rivera gave Mendoza $100 for payment to a gynecologist according to her testimony. Shortly thereafter Rivera became ill and Mendoza visited him at his home under the guise of being the wife of a friend.

Rivera died on January 6, 1974. On June 20, 1974, while seeking medical treatment connected with her pregnancy, Mendoza swore in an affidavit that Rivera was the father of the child. On July 13, 1974 claimant was born. No father's name was included in the birth certificate apparently because the hospital would not do so without a court action.

In October, 1974 Ms. Mendoza brought a filiation action on her daughter's behalf in the commonwealth courts. That case has not yet been decided. In March of 1976 the request for child's insurance benefits was initiated.

During proceedings on that request a written statement was taken from Rivera's widow. She stated that her husband "lived with me for 30 years up to his death and was never absent from my home." She also disclaimed knowledge of Mendoza or the child prior to her husband's death. Rivera never acknowledged paternity in writing even though he seems to have been aware that his illness was terminal.

Several witnesses testified during the hearing that the child bore a resemblance to Rivera. Also during that hearing counsel for claimant explained that the widow and children of Rivera had refused to submit to blood tests which a hematologist might use to determine the likelihood that Rivera was the claimant's father.

No statements were taken from Rivera's children or neighbors.

## II.

The ALJ defined the issue as "whether the claimant Cynthia Mendoza is the child of the deceased wage earner." He found, among other things, that:

"4. The wage earner died and was domiciled in Puerto Rico, and thus the laws that apply to the present issue are the laws of Puerto Rico...."

"7. In the opinion of the ALJ there has not been satisfactory evidence presented to prove that the claimant is the deceased wage earner's child. The wage earner had ample time in which to have prepared a written acknowledgement of the still unborn child if that had been his desire. Particularly, considering that he knew he was dying from cancer...."

"8. The claimant on the proof submitted is determined not to be the child of the deceased wage earner."

The ALJ did not indicate in what respect the evidence of paternity was inadequate nor did he suggest what further sort of evidence (beyond acknowledgement) might have sufficed to have established that claimant was Rivera's child.

The district court agreed that the laws of Puerto Rico were applicable, and determined that Section 504 of Puerto Rico's Civil Code was the appropriate provision and that claimant had not proven eligibility under that section. It did not purport to pass upon any claim for eligibility other than that based on the right to inherit property under Puerto Rican law.

## III.

■ 42 U.S.C. § 416(h)(2)(A) provides that in determining whether an applicant is the child of an insured individual who is dead, "the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property ... by the courts of the State in which [the insured individual] was domiciled at the time of his death...." Thus it would have sufficed to show that Cynthia was Rivera's

child in any way that would satisfy Puerto Rico intestate law.[1]

The statute also sets criteria of its own as an alternative to those set by state law. These include acknowledgement "in writing that the applicant is his . . . daughter," or else a showing "by evidence satisfactory to the Secretary" that the insured individual was the father of the applicant, and was living with or contributing to the support of the applicant at the time the insured individual died. 42 U.S.C. § 416(h)(3)(C).

■ As Rivera did not acknowledge Cynthia, she had to prove by some other means that he was her natural father. The burden of doing so was, of course, on her. *Hernandez v. Weinberger*, 493 F.2d 1120 (1st Cir. 1974).

■ The ALJ found that claimant was not the child of Rivera. If this finding were supported by substantial evidence, the matter would end there. *See Gonzalez v. Richardson*, 455 F.2d 953 (1st Cir. 1972). We are, however, at a loss to find a basis for this positive finding of non-paternity. Rivera's wife's statement that he had lived with her for 30 years and was never absent from the home is disputed by an enormous body of evidence. The failure of Rivera to claim paternity directly in the two weeks available to him prior to his death of lung cancer is not proof of non-paternity either.

Finding # 7 thus becomes crucial. In that finding the ALJ held that claimant had not presented satisfactory evidence of paternity.[2] This finding apparently was an application of 42 U.S.C. § 416(h)(3)(C)(ii). Under 42 U.S.C. § 416(h)(3)(C)(ii) a claimant will be deemed a child of the wage earner if "such insured individual is shown by evi-dence satisfactory to the Secretary to have been the father of the applicant" and the wage earner was contributing to the child's support at the time of his death.

■■ The phrase "evidence satisfactory to the Secretary" could conceivably mean that the Secretary has unbridled discretion to determine what evidence is sufficient. But discretion does not usually include the right to act arbitrarily or without criteria. *Appalachian Power Co. v. Environmental Protection Agency*, 477 F.2d 495, 507 (4th Cir. 1973). We think Congress meant to grant to the Secretary considerable latitude to determine the type and extent of evidence deemed satisfactory to establish paternity so long as such standards were reasonable. Our understanding in this regard is buttressed by 42 U.S.C. § 405(a) which states that "The Secretary . . . shall adopt *reasonable* and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence. . . ." (Emphasis supplied).

Thus we review the Secretary's finding of failure of proof in terms of its reasonableness. If it is supported by substantial evidence, we must affirm it. 42 U.S.C. § 405(g). But substantial evidence itself means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). *See also Richardson v. Perales*, 402 U.S. 389, 396, 91 S.Ct. 1420, 1424, 28 L.Ed.2d 842 (1971), in which the Supreme Court appears to have applied the substantial evidence test to a finding of a failure to meet the burden of proof.

---

1. In discussing this point the Secretary's brief appears to place reliance on a construction of Puerto Rican law which we believe to be erroneous.

 Reading the relevant statute, 31 L.P.R.A. § 504, in light of the leading Puerto Rico case, *Ocasio v. Diaz*, 88 P.R.R. 658 (1963), it seems clear that special proofs of paternity are no longer required. Rather all that must be shown is biological paternity by a preponderance of the evidence on whatever type of proof is presented. 88 P.R.R. at 731–32.

2. Part of this finding exhibits the ALJ's concern that Rivera failed to acknowledge paternity in writing. We note that acknowledgement in writing is an *alternative* form of proof where the .father is deceased under 42 U.S.C. § 416(h)(3)(C)(ii). Only when such proof is not available could one apply § 416(h)(3)(C)(ii) and thus lack of written acknowledgement is irrelevant to a claim under § 416(h)(3)(C)(ii).

Reviewing the record, we are struck by the sheer quantity of the evidence supporting claimant's position that Rivera was the father, and the paucity of any evidence to the contrary. We are also struck by the absence of any guideline or rule of the Secretary, relative to cases of this sort, which might serve as a basis for discounting any or all of claimant's proof. Finally, we are struck by the absence of any stated reason by the ALJ for discrediting claimant's witnesses—indeed, the ALJ nowhere said that he discredited claimant's evidence, leaving us puzzled as to why he decided as he did.

The mother's testimony that she had sexual relations with Rivera and with no one else during the time in which she became pregnant is corroborated to a substantial degree by statements of members of her household and four of her neighbors, as well as by the important fact that Rivera gave her address as his own on the hospital form and made regular payments for her support. It is further corroborated by the testimony of members of her household and a neighbor that Rivera had implicitly and explicitly claimed that he was the father. His payment of certain medical expenses connected with the pregnancy also bolsters this testimony.

 The ALJ did not say he doubted this testimony—only that he found it to be insufficient. Nowhere does he explain why he deemed it so. Ms. Mendoza, it is true, testified that she had previously had two illegitimate children by men with whom she had earlier cohabited. From this and the fact of her casual marriage to Laureano one might wonder whether during the period Rivera was living with her, she might not also have been having other visitors. But there is absolutely no evidence of this, notwithstanding ample opportunity, both at the hearing and during a field investigation, to have inquired whether visitors other than Rivera were observed at the Mendoza home. The ALJ made no finding that Ms. Mendoza was sexually involved with others than Rivera during the relevant period. The Secretary's field investigation adduced only Mrs. Rivera's statement, almost surely wrong, that Rivera was never absent from home. The only other negative aspects of the record are the inferences to be drawn from the failure of Rivera to acknowledge paternity in writing though he knew that he was dying. That failure as noted, *supra*, is irrelevant to a § 416(h)(3)(C)(ii) claim and is subject to other interpretations than that given it by the ALJ. For the sake of argument, though, we consider it and note that the drawing of permissible inferences is a matter within the prime responsibility of the Secretary. *Rodriguez v. Celebrezze*, 349 F.2d 494 (1st Cir. 1965). But we find it difficult to view that inference, even when coupled with Mrs. Rivera's statement and inferences concerning Ms. Mendoza's morals generally, as sufficient to rebut the strong case put forward for paternity. Our view might be different had the ALJ expressly discredited the witnesses on some reasonable basis, or had he or the Appeals Council pointed to standards of proof established by the Secretary which rendered claimant's evidence insufficient or incomplete for these purposes. Nothing of this sort, however, appears. It is hard to see what more claimant could have presented than she did. We hold, therefore, that the conclusion that claimant had not met her burden of proof was unreasonable and is not supported by substantial evidence in this record.

Our conclusion that the non-paternity determination is unsupported does not end the matter. There is a second prong of the § 416(h)(3)(C)(ii) test that must be met before claimant can be found eligible for child's insurance benefits. Claimant must show that Rivera was "contributing to the support of the applicant at the time" that he died. Because the ALJ found that claimant was not Rivera's child he had no need to make a finding on this matter. This issue must be decided upon remand.

 We note that in the case of a posthumous child such a finding of support presents difficulties obviously not present where the father survives some time past the birth of the child. Courts have considered the issue and, in apparent recogni-

tion of the fact that these provisions should be liberally construed in favor of claimants, have held in favor of the claimant where the father contributed to the mother's support during pregnancy or helped pay medical bills associated with the pregnancy. *Adams v. Weinberger,* 521 F.2d 656 (2d Cir. 1975); *Doxey v. Mathews,* CCH Unemployment Insurance Reporter 15239 (D.Mo. 1976). *See also Jones v. Harris,* 629 F.2d 334 (4th Cir. 1980). On remand we would anticipate that the type of factors discussed in those cases will be considered.

■ Therefore, the judgment of the district court is vacated and the case is remanded with directions that the district court remand to the Secretary for further proceedings consistent with this opinion.[3]

---

**3.** On remand the Secretary may wish to offer further evidence to rebut claimant's paternity claim. In light of the death of claimant's mother and the amount of time that has passed we would have grave doubts as to the fairness or likelihood of success of such an effort absent compelling new evidence that claimant's paternity claim is without foundation.

The Secretary may wish to consider whether it would not be appropriate to have a different ALJ "take a completely fresh look" at this case, *see Diaz v. Secretary of H. E. W.,* 613 F.2d 1194, 1200 (1st Cir. 1980). We do not mean by this to question the fairness of the ALJ but doubt the ability of any ALJ in these circumstances to proceed with the case unaffected by his earlier judgment.