**Vinnie McBRIDE on Behalf of Yvonne McBRIDE, Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 84–4176.

United States District Court, D. New Jersey.

Oct. 22, 1985.

Elizabeth Inserra, Newark, N.J., for plaintiffs.

Mary G. Courtney, Asst. U.S. Atty., Newark, N.J., for defendant.

OPINION

HAROLD A. ACKERMAN, District Judge.

This case is before me under section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final determination of the Secretary denying plaintiff the surviving child's benefits which she is seeking. Plaintiff has exhausted the administrative channels, and this case is properly before me for review. The ALJ determined that the plaintiff, Yvonne McBride, an infant, is not a "child" for the purposes of 42 U.S.C. § 416(h)(2)(A) or (B) or 42 U.S.C. 416(h)(3)(C). This finding for reason stated infra was not based on substantial evidence. The ALJ, in an error of substantive law, excluded admissible evidence on the issue of paternity. Additional evidence supportive of plaintiff's position was not developed by the ALJ. Claimant first applied for benefits when she was less than two years old. At the time of the hearing before the ALJ, the claimant had attained the age of 5 and testified on her own behalf. (Plaintiff's Brief at 5. This testimony is not included in the record). This court can see no compelling reasons for leaving claimant suspended in the morass of bureaucracy while her childhood trickles by. The ALJ's decision was not based on substantial evidence. It is the opinion of this court, therefore, that the decision of the ALJ is reversed. Claimant is hereby awarded surviving child's benefit under 42 U.S.C. § 416(h)(2)(A).

*I. Procedural History*

The plaintiff Vinnie McBride is proceeding on behalf of her infant daughter Yvonne McBride. Yvonne was born on July 3, 1978 (Tr. 56). The wage earner in this case is Alvina Derrick, now deceased, the alleged father of Yvonne. Alvina Derrick died on February 23, 1980, at the age of 36, from visceral congestion, cause pending toxicological examination (Tr. at 53). On March 6, 1980, plaintiff filed for surviving child's benefits (Tr. at 41–44). This application was denied on May 5, 1980, and no appeal was taken (Tr. at 41–44). Plaintiff made a new application for benefits on September 1, 1982, which was denied on October 28, 1982 (Tr. at 9). On December 6, 1982, plaintiff made a request for reconsideration. (Id.). A reconsideration determination was handed down on February 12, 1983, but plaintiff's claim was again denied on the grounds that "Yvonne did not qualify as a 'child' of the wage earner under the Social Security Act." (Tr. at 9). On November 29, 1983, plaintiff requested a hearing before the ALJ; this hearing occurred on February 1, 1984. (Tr. at 19). Vinnie McBride proceeded *pro se*. The ALJ denied plaintiff's application for benefits on the following grounds: 1) Yvonne failed to qualify as a "child" of the wage earner under 42 U.S.C. § 416(h)(2)(A) or (B); and 2) Yvonne did not qualify as a "child" under 42 U.S.C. § 416(h)(3)(C). On April 11, 1984, plaintiff made a request for review; (Tr. at 13) the Appeals Council denied this request on August 3, 1984. (Tr. at 3). This case is now properly before me for review.

*II. Statement of Facts*

Yvonne T. McBride was born on July 3, 1978. Her parents were not married. (Tr. 38). Yvonne's birth certificate lists Vinnie McBride as her mother; however, the information space for "father" is blank. (Tr. 56). At the hearing on February 1, 1984, the ALJ questioned Vinnie McBride about the birth certificate. Ms. McBride stated that when she first saw the birth certificate, she was "very much upset" because the father's name was omitted. (Tr. 36). Upon receiving the birth certificate in the mail, she visited the Bureau of Vital Statistics who informed her that the name "Alvina Derrick" could not be listed on the Birth certificate "because father isn't given". (Tr. 36).

When Yvonne was born, Ms. McBride applied for welfare for her. It was her understanding that the welfare department would take the alleged father to court upon the initial application for benefits. (Tr. 36). (Ms. McBride has an older child whose father was in this manner adjudicated to be Alvina Derrick). An action to establish paternity was filed on August 15, 1978 in

the Essex County Juvenile and Domestic Relations Court, Docket No. 97195. This complaint to establish paternity and support was drawn pursuant to N.J.S.A. 9:17. (Now repealed). The complaint listed Alvina Derrick as defendant and was signed by a designated representative of the Essex County Welfare Board. (Tr. 80). This case was never adjudicated. (Tr. 17).

At the hearing before the ALJ, Vinnie McBride presented sworn statements from family members as evidence of paternity. Bernice Derrick Ford, Alvina's mother; Gertrude Price, Alvina's grandmother; and Glenn Derrick, Alvina's brother, all stated 1) that at the time of his death Alvina was living with and supporting Yvonne; 2) that Alvina acknowledged paternity of Yvonne, and that 3) the family members considered themselves to be respectively, the grandmother, great-grandmother, and uncle of Yvonne. (Tr. 74–77). The ALJ did not accept these statements as satisfactory evidence on the grounds that they were based on hearsay (Tr. 18). As explained *infra*, this ruling was error on the part of the ALJ.

Vinnie McBride stated at the hearing that Alvina Derrick was living with her; however, this arrangement was clandestine so as not to disrupt her welfare payments. (Tr. 35). As his mailing address, Alvina Derrick used the address of his mother or grandmother in Newark. *Id.* The plaintiff stated that her sole proof that Alvina Derrick resided with her at the time of his death was statements of family members and the fact that people from work dropped him off at their home. (Tr. 33). In September 1982, the plaintiff stated that her cousin Cheryl Moses lived with her and could attest to the fact that Alvina Derrick was living in the home with Vinnie, Hason, and Yvonne McBride. (Tr. 17). Cheryl Moses did not offer any testimony in the instant claim, nor in the previous claim. The ALJ ruled that the plaintiff could not support her allegations that Alvina Derrick was residing with Yvonne at the time of his death. The ALJ relied upon Alvina's obituary notice in the newspaper which listed Alvina Derrick's address as that of his mother. (Tr. 18). (This obituary notice also stated that Alvina Derrick was the father of Yvonne, but the ALJ did not choose to rely on this portion of the article.) (Tr. 55).

Of relevance also in the instant determination, is the issue of child support. The claimant testified at the hearing that Alvina Derrick contributed to the support of both Hason McBride and Yvonne McBride (Tr. 34). The sworn testimony of Bernice Derrick Ford, Gertrude Price, and Glenn Derrick support this contention, and the Secretary presented no evidence to refute it. Alvina Derrick was under a court order to provide support for Hason McBride and this was in arrears. Vinnie McBride stated that every 2 weeks, when Alvina Derrick was paid, he gave her $40–60 for the support of Hason and Yvonne. These payments were always in cash, and Ms. McBride had no receipts, checks, or written proof. *Id.* Ms. McBride was unable to gain access to Alvina Derrick's employment records to ascertain whether he had listed Yvonne as a dependent. (Tr. 37–38). This was because she was not the decedent's wife. (Tr. 38). On September 17, 1982, a representative of the wage earner's employer was contacted. She stated that a co-employee of Alvina Derrick stated that Alvina had mentioned dependents named "McBride". This was supported by the payroll and employment record office located in Maryland, although the office stated that further investigation was needed to verify that Yvonne's name was listed in the records. (Tr. 69). No further development of this evidence was included in the record. However, in his determination, the ALJ erroneously stated that the employment records showed no recognition of Yvonne by Alvina Derrick. (Tr. 17). It is not alleged by the plaintiff that lack of counsel prejudiced her right to a fair hearing. However, the ALJ has a heightened responsibility in *pro se* claims. *Livingston v. Califano*, 614 F.2d 342 (3d Cir.1980). Clearly, the ALJ failed in his duty with respect to the development of the decedent's employment records. The claimant was thwarted in her attempts to secure the employment records, and the ALJ made no

effort to develop the record. "A social security judge acts as an examiner charged with developing the facts ... and is under an affirmative duty to inquire into all the matters at issue." *Coulter v. Weinberger*, 527 F.2d 224 (3d Cir.1975) (citations omitted). Failure to consider evidence favorable to the claimant without giving reasons for the rejection of such evidence violates the 3d Circuit standards enunciated in *Cotter v. Harris*, 642 F.2d 700 (3d Cir.1981) and is grounds for reversal.

### III. Analysis

#### A. Who is a "child"?

I turn now to a consideration of the law relevant to the instant determination. To qualify for benefits as a surviving child, a claimant must be determined to be a "child" under 42 U.S.C. § 416(h)(2)(A) and (B) which states in pertinent part:

(2)(A) In determining whether an applicant is the child ... of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property ..., if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death ....

(B) If an applicant is a son or daughter of a fully or currently insured individual but is not (and is not deemed to be) the child of such insured individual under subparagraph (A), such applicant shall nevertheless be deemed to be the child of such insured individual if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of paragraph (1)(B), would have been a valid marriage.

I need not consider § 416(h)(2)(B), for Alvina Derrick and Vinnie McBride did not participate in a marriage ceremony. I therefore turn my attention to § 416(h)(2)(A).

■ It is uncontested that Alvina Derrick was domiciled in the state of New Jersey at the time of his death. Therefore, the controlling law is New Jersey intestacy law. There is a question in this case as to which year's form of the New Jersey intestacy statute is applicable. The ALJ applied the 1978 version of the statute which required that the parents intermarry or that paternity be established by clear and convincing proof. (Tr. 17). However, at the time of the hearing on February 1, 1984, the 1983 revision of the law had been in effect since April 1983.

The harsh common law rule on illegitimate children prevented their inheriting from either parent in intestacy. N.J.S.A. 3A:4–7, modified the common law by providing that illegitimate children could inherit by and through the mother. Such children could only inherit from an intestate father if the parents had subsequently married and the child was recognized. In 1977, N.J.S.A. 3A:4–7 was ruled unconstitutional following *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). *In the Matter of the Estate of Sharp*, 151 N.J.Super. 579, 377 A.2d 730 (Ch.Div.1977). Like the Texas statute in *Trimble*, the New Jersey statute applicable in *Sharp*, N.J.S.A. 3A:4–7, was found unconstitutional because it failed to grant illegitimate children the same rights vis-a-vis their father as it granted vis-a-vis the mother, thereby violating the due process requirements of the Amendment. *Sharp*, 377 A.2d at 732. N.J.S.A. 3A:4–7 was repealed by P.L.1977, C. 412, § 90, eff. September 1, 1978, and replaced in the new Probate Code by N.J.S.A. 3A:2A–41, P.L. 1977, C. 412, § 44, eff. September 1, 1978.

At the time of Alvina's death in 1980, the New Jersey law on intestate succession was broader than N.J.S.A. 3A:4–7. N.J.S.A. 3A:2A–41 permitted succession if paternity had been adjudicated before the death of the father or was established by clear and convincing proof. N.J.S.A. 3A:2A–41(b)(2) (1978). However, in 1983 the law on succession had been further expanded to include the "New Jersey Parentage Act." In its present form, the law reads, in pertinent part:

### 3A:2A–41. Meaning of child and related terms

If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person, ... (b). In cases not covered by subsection a, a person is the child of its natural parents regardless of their marital status. The parent and child relationship may be established by proof that parentage has been adjudicated under prior law, under the laws governing probate, by an order of a court in another state or pursuant to the "New Jersey Parentage Act," P.L. ........, c...... (C..........) (now pending before the Legislature as Senate Bill No. 888 of 1982).

Before commencing an analysis of the "New Jersey Parentage Act", I turn to a consideration of which rendition of N.J.S.A. 3A:2A–41 should apply in the instant case. Under the 1978 version of the statute, Yvonne must show that before the death of Alvina, he was adjudicated to be her father, or she must establish his paternity by clear and convincing proof. However, under the 1983 statute, the clear and convincing proof standard was abandoned. Thus, if Yvonne can meet the requirements of the "New Jersey Parentage Act" which permits a *presumption* of paternity which is *rebuttable only* by clear and convincing proof, she need not go through the formal adjudication process. The burden of proof in New Jersey has shifted from the alleging to the denying party. This is especially significant, here, for the Secretary has not presented a breath of suggestion, much less any clear and convincing proof, that Alvina was not the father of Yvonne.

The court in *Sharp, supra* in considering the question of retroactivity and prospective application, stated "... prospective application may be particularly fair in a property case where persons have justifiably relied on prior law." *Sharp* at 733 (citations omitted). In the case before me, the question of reliance is moot, for Alvina Derrick died intestate. Of greater relevance, therefore, is the matter of judicial fulfillment of legislative intent, as the *Sharp* court noted:

> The final issue is the consequence of the invalidation. Plaintiff cites *Schmoll v. Creecy* [104 N.J.Super. 126, 249 A.2d 3 (1969)], *supra*, in which the Appellate Division in a dictum indicated that were N.J.S.A. 3A:4–7 unenforceable, an illegitimate child would be relegated to his common law status and be able to inherit from neither intestate parent. 104 *N.J. Super.* at 137–38, 249 A.2d 3. Yet the Supreme Court on the further appeal in an analogous situation considered the overall legislative intent and would not let the wrongful death statute fall even though its class of beneficiaries had to be expanded to save it. 54 *N.J.* [194] at 202–205, 254 A.2d 525. The approach of the Supreme Court does not seem consistent with the Appellate Division dictum. *In this era of expanding legislative condemnation of discriminatory practices, including the forbidding of discrimination of the basis of ancestry under the Law Against Discrimination, the court believes that the Legislature would not want the court to deny to illegitimate children the rights granted under N.J.S.A. 3A:4–7.* See N.J.S.A. 10:5–3; *Hammond v. Pennsylvania R.R. Co.*, 31 *N.J.* 244, 156 A.2d 689 (1959). The legislative intent may be best observed by construing *N.J.S.A.* 3A:4–7 to include the right of an illegitimate child to inherit from his father as well as his father's ancestors, descendants and collaterals. Thus, the illegitimate child of a male decedent will be considered his issue within N.J.S.A. 3A:3–10. Accordingly, the will of Willie J. Sharp is denied probate.

*Sharp* 377 A.2d at 733 (emphasis added).

The evolution of the New Jersey law on intestacy evinces legislative tempering in New Jersey of the harsh common law rule. This temperate attitude has also been demonstrated by the New Jersey courts. In 1967, in the case of *In the Matter of the Guardianship of C.*, 98 N.J.Super. 474, 237 A.2d 652 (Juv. & Dom.Rel.Ct., Union County, 1967) the court stated the following:

"We choose to solve the problem upon the modern and more humanitarian view that these little unfortunates, who play no part in their conception, are entitled to the law's utmost favor." *In the Matter of C.* at 491, 237 A.2d 654, quoting *French v. Catholic Community League,* 69 Ohio App. 442, 44 N.E.2d 113, 114–15 (Ct.App.1942). This view was reiterated in 1976, "It is irrefutable that our courts have construed statutes pertaining to legitimation of children quite liberally in order to spare children who are innocent of any wrongdoing from being burdened with the stigma of illegitimacy." *In re Estate of Dussell,* 145 N.J.Super. 363, 366 (Camden County 1976), 367 A.2d 1188 (A.D.1976). Nor is this humane design limited to New Jersey. In the oft-cited Supreme Court case *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the court expressed a modern concern for children born out-of-wedlock:

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disability on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these helpless children, but the Equal Protection clause does enable us to strike down discriminatory laws relating to status of birth where—as in this case—the classifi-

cation is justified by no legitimate state interest, compelling or otherwise.

406 U.S. at 175–76, 92 S.Ct. at 1406–07 (1971) (footnote omitted).

Therefore, I see no purpose to be served by requiring Yvonne to establish entitlement under the narrower 1978 version of N.J.S.A. 3A:2A–41.

In addition, I wish to emphasize here that this court is not intervening in a filiation proceeding, but is reviewing a case of entitlement to Federal benefits. Any consideration of the "New Jersey Parentage Act" which I undertake in the instant case is for the purpose of establishing paternity in the context of this Social Security claim only. The question of entitlement arose when Yvonne presented her case to the ALJ in 1984. It is, therefore, more fitting to apply the intestacy law in effect at that time.*

I turn now to a consideration of the "New Jersey Parentage Act", which includes methods of proof acceptable under the currently applicable N.J.S.A. 3A:2A–41.

The "New Jersey Parentage Act", P.L. 1983, c. 17 § 1, is codified at N.J.S.A. 9:17–38 to 9:17–59 (West 1985). The pertinent Section reads as follows:

**9:17–41. Proof of parent-child relationship: termination of natural parental rights.**

The parent and child relationship between a child and

a. the natural mother may be established by proof of her having given birth to the child, or under this act;

b. The natural father may be established by proof that his paternity has been adjudicated under prior law; under the laws governing probate; by an order

---

* My decision to apply the existing law at the time of the administrative hearing can be distinguished from the decision of the Third Circuit in *Adens v. Schweiker,* 773 F.2d 545 (3rd Cir. 1985). In *Adens* the Court applied the state intestacy law in effect at the time of death because it found that the state in question, Pennsylvania, fixes *intestate rights at the time of* the decedent's demise. Slip op. at 547. The Court's determination was primarily based on the existence of a non-retroactivity clause contained in the Pennsylvania intestacy statute which was in effect at the time of claimant's application for benefits. (The Court also referred to a 1983 Pennsylvania Superior Court decision applying the intestate law in effect at the time of death, rather than the time of suit.) In the instant case, however, the 1983 New Jersey statute does not contain a non-retroactivity clause.

of a court of competent jurisdiction in another state or under this act; ... N.J.S.A. 9:17–41.

■ Therefore, Yvonne McBride could establish paternity through adjudication under N.J.S.A. 9:17–41(b). She is not barred by the death of the alleged father, N.J.S.A. 9:17–45(c), nor is she precluded by the statute of limitations. N.J.S.A. 9:17–45(c); *Eisler v. Toms*, 160 N.J.Super. 272, 274 (Salem County 1978), 389 A.2d 529, (citing an 1851 case to show that filiation proceedings are not barred by the statute of limitations applicable in other actions).

Under the Act, formal courtroom proceedings are not required to prove parentage. This was also true under prior law. *In the Matter of C., supra*, 98 N.J.Super. at 491, 237 A.2d 654. Vinnie McBride may proceed to establish paternity through nonjudicial means:

**9:17–43. Presumptions**

a. A man is presumed to be the natural father of a child if:

. . . . .

(4) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child; or

(5) While the child is under the age of majority he provides support for the child and openly holds out the child as his natural child; or

. . . . .

b. A presumption under this section may be rebutted in an appropriate action *only by clear and convincing evidence.* If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court order terminating the presumed father's paternal rights or by establishing that another man is the child's natural or adoptive father.

. . . . .

N.J.S.A. 9:17–43(a)(4–6) and (b) emphasis added). A feasible explanation for the statutory establishment of these presumptions was aptly expressed as long ago as 1967:

When the father of such a child publicly acknowledges its paternity, and continuously contributes to its support and welfare (here $10.00 per month), and is a proper person, he is next in law entitled to its custody, when the mother relinquishes or abandons its control. To say that such a father must first, by a public spectacle in a bastardy proceeding, acknowledge paternity or be adjudged the reputed father of the illegitimate child, before he can be considered the child's father and in his order entitled to the child's custody, is to require the doing of a useless and rather despicable thing. The public parading of the sexual misstep is not conducive of the infant's welfare or its peace of mind after it passes adolescence. It cannot enlarge the father's sense of responsibility. It might deter him from performance of his moral and legal duty. The question comes: Why require one to prove that which he freely admits? Such a course is far from the rule of modern practice.

*In the Matter of C., supra.*, at 491, 237 A.2d 654, quoting *French v. Catholic Community League, supra. See also R. v. F.*, 113 N.J.Super. 396, 273 A.2d 808 (Juv. & Dom.Rel.Ct., Union County 1971) at 408, 273 A.2d 808 (living together lends credence to asserted paternity).

■ It is my opinion that the ALJ committed an error in refusing to concede Alvina Derrick's open acknowledgement of Yvonne. The ALJ committed reversable error in dismissing as hearsay the sworn statements of Alvina's family. Rather than being dismissible as hearsay, such statements fall under the hearsay exception:

(19) Reputation concerning personal or family history. Reputation among members of his family by blood, adoption, or marriage, or among his associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of his personal or family history.

Fed.Rules Evid.Rule 803(19), 28 U.S.C.A. Indeed, even neighborhood reputation is admissible evidence of legitimacy. 5 Wigmore, Evidence § 1605 (Chadbourn Rev. 1974).

 The family statements are proof that Alvina Derrick lived with Yvonne and openly held her out as his natural child. This would establish paternity under N.J.S.A. 9:17–43(a)(4), *supra.* The family statements also satisfy N.J.S.A. 9:17–43(a)(5), *supra,* for they show that Alvina supported Yvonne and openly held her out as his child. After a careful search, this court can find no New Jersey case law for guidance in construing N.J.S.A. 9:17–43(a)(4) and (5). I rely, therefore, on the legislative design previously discussed, and on judicial precedent in New Jersey favoring the liberal construction of statutes pertaining to legitimation. *Dussell, supra.*

Under N.J.S.A. 9:17–43(b), the presumption of paternity is rebuttable *only* by clear and convincing proof. Clearly, the Secretary has failed to meet that standard. No denial of Yvonne by Alvina or any other family member was presented by the Secretary. No appearance of protest was made by Alvina's former wife who, as the mother of his legitimate child now receiving benefits, was an interested party in the instant action. Rather, all the available evidence, coupled with the fact that Yvonne's brother, Hason McBride, is acknowledged to be the child of Alvina Derrick and is currently receiving benefits, strongly and logically suggests that Alvina was the father of Yvonne.

I therefore find that the ALJ's denial of Yvonne's claim for benefits under 42 U.S.C.A. § 416(h)(2)(A) was not based upon substantial evidence, and this decision of the ALJ is reversed.

B. A "child" by another standard: Federal law

As an alternative to qualifying for benefits under the state law standards pursuant to 42 U.S.C. § 416(h)(2)(A), an applicant may claim entitlement under the Federal Standards delineated in 42 U.S.C.A. § 416(h)(3)(C):

(C) in the case of a deceased individual—

(i) such insured individual—

(I) had acknowledged in writing that the applicant is his or her son or daughter,

(II) had been decreed by a court to be the mother or father of the applicant, or

(III) had been ordered by a court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is *shown by evidence satisfactory to the Secretary* to have been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

(emphasis added).

The ALJ denied Yvonne's application on the additional grounds that she did not present satisfactory evidence of paternity required by 42 U.S.C.A. § 416(h)(3)(C)(ii).

This court has found no Third Circuit cases on the issue of what constitutes satisfactory evidence under 42 U.S.C.A. § 416(h)(3)(C)(ii). However, in an especially opposite case, the First Circuit stated:

The phrase "evidence satisfactory to the Secretary" could conceivably mean that the Secretary has unbridled discretion to determine what evidence is sufficient. But discretion does not usually include the right to act arbitrarily or without criteria, *Appalachian Power Co. v. Environmental Protection Agency,* 477 F.2d 495, 507 (4th Cir.1973). We think Congress meant to grant to the Secretary considerable latitude to determine the type and extent of evidence deemed satisfactory to establish paternity so long as such standards were reasonable. Our understanding in this regard is buttressed by 42 U.S.C. § 405(a) which states that "The Secretary ... shall adopt *reasonable* and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence...."

(Emphasis supplied).

Thus we review the Secretary's findings of failure of proof in terms of its reason-

ableness. If it is supported by substantial evidence, we must affirm it. 42 U.S.C. § 405(g). But substantial evidence itself means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). *Mendoza v. HHS*, 655 F.2d 10, 13 (1st Cir. 1981).

 I hold that, for the reasons set forth earlier in this opinion, the sworn statements of Alvina Derrick's family members should have been accepted by the Secretary as satisfactory evidence under 42 U.S.C.A. § 416(h)(3)(C)(ii). I find, therefore, that the ALJ's denial of Yvonne's claim under 42 U.S.C.A. § 416(h)(3)(C)(ii) was not based upon substantial evidence. I therefore reverse this decision of the ALJ.

### C. Dependency

Once Yvonne has cleared the paternity hurdle, she must face the issue of dependency. Under 42 U.S.C.A. § 402(d)(1) dependency is required before a child is entitled to survivor's benefits. However, under 42 U.S.C.A. § 402(d)(3),

> Certain children ... are relieved of the burden of such individualized proof of dependency. Unless the child has been adopted by some other individual, a child who is legitimate, or a child who would be entitled to inherit personal property from the insured parent's estate under the applicable state intestacy law, is considered to have been dependent at the time of the parent's death. Even lacking this relationship under state law, a child, unless adopted by some other individual, is entitled to a presumption of dependency if the decedent, before death, (a) had gone through a marriage ceremony with the other parent, resulting in a purported marriage between them which, but for a non-obvious legal, defect, would have been valid, or (b) in writing had acknowledged the child to be his, or (c) had been decreed by a court to be the child's father, or (d) had been ordered by a court to support the child because the child was his.

*Mathews v. Lucas*, 427 U.S. 495 at 498–99, 96 S.Ct. 2755 at 2759, 49 L.Ed.2d 651 (1976), citing 42 U.S.C.A. 402(d)(3) (footnotes omitted) (emphasis added). Because Yvonne meets the standards of the New Jersey intestacy law, N.J.S.A. 3A:2A–41, *supra*, she is entitled to the presumption of dependency. Therefore, I need not reach the question of proof of support.

### IV. Conclusion.

For the reasons set forth in this opinion, it is the decision of this court that Yvonne McBride is entitled to surviving child's benefits under 42 U.S.C.A. § 416(h)(2)(A) and 42 U.S.C.A. § 402(d)(3). The decision of the ALJ is reversed and the Secretary is ordered to provide Yvonne McBride with surviving child's benefits in accordance with the applicable statutes.