PATRICIA AGNES NICKELL, PLAINTIFF-APPELLANT, v. CLAIRE M. GALL, INDIVIDUALLY AND AS ADMINIS-TRATRIX OF THE ESTATE OF CONSTANCE M. ZACK, DECEASED, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued March 7, 1967—Decided April 24, 1967.

Mr. *Gerald W. Conway* argued the cause for appellant (*Messrs. Schreiber & Lancaster*, attorneys).

*Mr. C. Russell Kramer* argued the cause for respondents (*Messrs. Smith, Kramer & Morrison,* attorneys; *Mr. Charles C. Collins, Jr.,* on the brief).

The opinion of the court was delivered by

JACOBS, J. The Chancery Division dismissed the plaintiff's complaint for failure to state a claim on which relief could be granted. *Nickell v. Gall,* 90 *N. J. Super.* 539 (*Ch. Div.* 1966). The plaintiff appealed to the Appellate Division and we certified before argument there.

The plaintiff Patricia was born in 1926 at which time her father had already deserted her mother Constance M. Friedlin. Thereafter Constance permitted her sister and brother-in-law, Agnes and Charles Dunlap, to adopt Patricia. A petition by the Dunlaps dated December 1928 was filed in the Essex County Orphans' Court and prayed that the petitioners be granted permission to adopt the child and that the court adjudge that the relations between the child and her natural mother shall be at an end, "excepting the right of inheritance." The petition bore the consent by Constance to the adoption of Patricia in accordance with the provisions of an act of the Legislature entitled "An Act concerning minors, their adoption, custody and maintenance (Revision of 1902)" approved April 2, 1902 and the amendments thereof. See *R. S.* 9:3–1 through *R. S.* 9:3–16 repealed by *L.* 1953, *c.* 264, *p.* 1778, § 18.

In January 1929 the Orphans' Court entered an order which granted the petition and adjudged and directed that "the rights, duties, privileges and relations heretofore existing between the said Patricia Agnes Friedlin, and her parent, the said Constance M. Friedlin, shall be, and are in all respects at an end, excepting the right of inheritance." See *R. S.* 9:3–7. After the adoption, Patricia lived with the Dunlaps and was known as Patricia Agnes Dunlap. In 1964 Patricia's natural mother, then Constance M. Zack, died intestate in Essex County. She was survived, apart from her daughter Patricia, by three sisters and a brother. The brother re-

nounced all interest and one of the sisters, Claire M. Gall, was appointed administratrix of the estate. Thereafter Patricia filed a complaint seeking to establish that she was the sole heir. On motion by the defendants, the Chancery Division dismissed the complaint because of its view that Patricia's so-called "right of inheritance" from Constance, expressly preserved in those terms in the statute then in force (*R. S.* 9:3–7) and in the adoption decree, was terminated by *L.* 1953, *c.* 264 (*R. S.* 9:3–17 through *R. S.* 9:3–36). See 90 *N. J. Super.,* at *pp.* 542–544.

There is no substantial dispute that inheritance laws may be changed from time to time and that they speak only as of the time of the death. See *In re Holibaugh's Will,* 18 *N. J.* 229, 235 (1955), 52 *A. L. R. 2d* 1223 (1957). And though the plaintiff suggests otherwise, we assume that the terms of the adoption decree would not present any constitutional obstacle to later legislation explicitly designed to terminate the child's right of inheritance from her natural parent. See *Kicey v. Kicey,* 112 *N. J. Eq.* 459, 462 (*Ch.*), affirmed 114 *N. J. Eq.* 116 (*E. & A.* 1933). However, the vital question here is whether the Legislature, by its enactment of *L.* 1953, *c.* 264, intended to preclude a natural daughter who had been adopted many years earlier under a law and decree explicitly preserving her right of inheritance, from claiming the estate upon the later death of her natural parent intestate. On the issue of intent we may bear in mind that legislation ordinarily operates prospectively (*Kopczynski v. County of Camden,* 2 *N. J.* 419, 424 (1949)) and that *L.* 1953, *c.* 264 was not a statute aimed at changing the general laws of descent and distribution but was an adoption statute designed primarily to prescribe modern procedures for adoptions along with their familial incidents and consequences. *Cf. Hall v. Scarlett,* 86 *U. S. App. D. C.* 166, 181 *F. 2d* 277 (*D. C. Cir.* 1950), rehearing denied 88 *U. S. App. D. C.* 201, 188 *F. 2d* 990 (*D. C. Cir.*), *certiorari* denied 341 *U. S.* 925, 71 *S. Ct.* 796, 95 *L. Ed.* 1357 (1951).

In our examination of *L.* 1953, *c.* 264, we find nothing to indicate that the Legislature had in mind cutting off the so-called rights of inheritance of prior adoptees such as the plaintiff; indeed the indications are to the contrary. Section 14(A) (*R. S.* 9:3–30(A)), which provides that the entry of a judgment of adoption "shall terminate" all relationships between the child and her natural parents "including rights of inheritance under the intestate laws of this' State," appears to us to point to future adoptions under the statute. And the saving clause in section 18 (*R. S.* 9:3–34) is so broadly phrased as to suggest a studied effort on the part of the Legislature to avoid any alteration in the right of inheritance preserved to prior adoptees under the earlier laws and decrees. It provides that although *L.* 1953, *c.* 264 repeals prior laws, it shall not be deemed "to invalidate or otherwise affect any adoption granted or any right or duty vested or established under any law heretofore in effect." It is significant that the Legislature was not content merely to avoid the invalidation of prior adoption decrees but directed that they shall not be "otherwise" affected; similarly it was not content with preserving those rights which were strictly "vested" but it also preserved those rights which were "established" under previous laws. Although the defendants point out that while the parent is alive, there is only an inheritance expectancy rather than a right, the Legislature throughout all of the enactments has obviously used the term "right of inheritance" as referring to the interest of the child under the general laws of descent and distribution in the event his parent dies intestate.

The Chancery Division drew an inference of retroactivity as to the remainder of the statute from the fact that in section 14(B) (*R. S.* 9:3–30(B)) the draftsman provided that when construing any testamentary document executed subsequent to the enactment of *L.* 1953, *c.* 264, "an adopted child shall be deemed lawful issue of the adopting parent unless such document shall otherwise provide." See 90 *N. J. Super.*, at *p.* 544. We draw no such inference. The draftsman was

undoubtedly aware of the currency of the problem (*In re Coe's Estate,* 42 *N. J.* 485 (1964)) and decided to deal with it specifically, a not uncommon practice in legislative draftsmanship. *Cf. Delaware River Port Auth. v. Hughes,* 46 *N. J.* 451, 454–455 (1966). It may well be of significance that, even here, all thoughts and terminology were directed towards prospective operation rather than retroactivity.

The Chancery Division apparently considered that *In re Holibaugh's Will, supra,* 18 *N. J.* 229, was controlling in favor of retroactivity. See 90 *N. J. Super.,* at *p.* 542; *La Bove v. Metropolitan Life Ins. Co.,* 264 *F. 2d* 233 (3 *Cir.* 1959); Bordwell, "Testate and Intestate Succession," 10 *Rutgers L. Rev.* 293 (1955); 19 *N. J. Practice (Ackerson and Fulop, Skills and Methods)* § 725, *p.* 438 (1960). *Holibaugh* arose in a different context and under different laws. There a 56-year old woman was adopted in 1949 under an adult adoption law which then provided, and still provides, that the adoptee's right of inheritance from his natural parents shall not terminate. *R. S.* 2:39–5; *N. J. S.* 2A:22–3. In 1953 the adoptee died, leaving a paper purporting to be her will. A brother of the full blood along with a brother of the half blood interposed a caveat against the purported will. The lower court held that the caveators had no standing in view of the 1951 revision of *Title* 2 under which blood relatives of an adult adoptee have no right of inheritance in the event the adoptee dies intestate. *N. J. S.* 2A:22–3. This Court affirmed, taking the position that the 1951 revision was intended to apply in cases of prior as well as future adult adoptions.

*Holibaugh* was not concerned with a provision for the child's inheritance as expressed here in the adoption decree and on which the natural mother may have relied in omitting a will. Nor did it involve an impairment of the child's own financial interests as would be effected by the statutory interpretation advanced by the respondents here. Above all, it did not involve legislation with a saving clause comparable in breadth or scope to *R. S.* 9:3–34. See *L.* 1951, 1st Sp. Sess., *c.* 344. We are satisfied that when it enacted *L.* 1953, *c.* 264

the Legislature did not contemplate cutting off the so-called rights of inheritance of prior child adoptees such as the plaintiff and that the Chancery Division erred in its conclusion to the contrary. Accordingly, the judgment of dismissal is:
Reversed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.