181 N.J. Super. 14 (1981)
436 A.2d 539
IN THE MATTER OF THE ESTATE OF ALEXANDER MAISLIN, A/K/A ALEX MAISLIN, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1981.
Decided October 6, 1981.
*15 Before Judges BOTTER, ANTELL and FURMAN.
Glenn T. Leonard argued the cause for appellants (Checki and Politan, attorneys; James D. Checki, Jr., of counsel; John M. Agnello and Glenn T. Leonard on the brief).
John T. Hildemann argued the cause for respondent (William A. Keating on the brief).
*16 PER CURIAM.
Presented by this appeal is the question whether an illegitimate child who was adopted by her natural mother's husband is entitled to an intestate share of her natural father's estate. The trial court held that she is so entitled. Her half sister and half brother appeal on the ground that at the time of adoption in 1948 New Jersey law barred an illegitimate child from inheriting from her natural father. We affirm.
The following material facts were stipulated: (1) in 1939 Marian Fishman was born to Alexander Maislin and Florence Wilson in Canada; (2) Alexander Maislin and Florence Wilson were never ceremonially married to each other and Marian Fishman was therefore the illegitimate child of Alexander Maislin; (3) Marian's mother, Florence Wilson, married John Denis Byers in Canada in 1944; (4) in 1948 John Denis Byers adopted Marian in Quebec, Canada, thereby changing her name to Shirley Byers, and (5) Alexander Maislin died intestate in New Jersey on December 25, 1977, at which time he was a resident and domiciliary of New Jersey.
The only testimony taken was that of Marian Fishman who testified that despite living with her mother and John Byers, throughout most of her childhood she continued to see her father and maintained a loving relationship with him. She also averred that her half sister, intervenor-appellant Penelope Maislin, always considered her to be her sister.
The trial judge ruled that Marian Fishman was entitled to a full intestate share of decedent's estate. On appeal appellants contend that the court erred in failing to apply the New Jersey intestacy law as it existed at the time of Marian's adoption in Canada in 1948, rather than the law at the time of decedent's death in 1977.
It is clear that Marian's rights of inheritance must be determined with reference to the adoption law in effect in New Jersey at the time of her adoption. Nickell v. Gall, 49 N.J. 186, 190 (1967); In re Avery, 176 N.J. Super. 469, 473, 476 (App.Div. *17 1980); In re Wolf, 98 N.J. Super. 89, 93 (App.Div. 1967), certif. den. 51 N.J. 273 (1968); In re Neuwirth Estate, 155 N.J. Super. 410, 427, 430 (Cty.Ct. 1978). In 1948 the pertinent provision of the Adoption Law read that "from the date of such [adoption] decree, the rights, duties, privileges and relations theretofore existing between the child and his parent or parents shall be in all respects at an end, excepting the right of inheritance" (emphasis added). N.J.S.A. 9:3-7. Therefore, putting aside the effect of Marian's illegitimacy, her status as an adoptee did not disentitle her to share in her natural father's estate.
As appellants correctly observe, the law of intestate distribution in effect in 1948 allowed an illegitimate child to inherit only from her mother, not from her father. It read as follows:
The mother of an illegitimate child, her heirs and next of kin, the maternal grandfather and grandmother of such child, and the illegitimate child, its heirs and next of kin, shall have capacity to take or inherit real estate from each other as heirs under the provisions of this chapter, in the same manner and to the same extent as if such child had been born in lawful wedlock and every illegitimate child shall be considered as a brother or sister of every other child of its mother, legitimate or illegitimate.
Nothing in this section shall be construed to change the existing laws in regard to the father of such child and his heirs and next of kin. [N.J.S.A. 3:3-10]
In 1951 this statute was recast as N.J.S.A. 3A:4-7 to read as follows:
For the purpose of descent and distribution under this chapter to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit and take from his mother and from his maternal kindred, including his maternal ancestors, descendants and collaterals; and they, from him and his issue. When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter.
It is evident that neither statute provided for an illegitimate child inheriting from his natural father.
On April 26, 1977, prior to decedent's death in December 1977, the United States Supreme Court held that a similar Illinois *18 statute was unconstitutional as denying equal protection to illegitimate children. Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). In In re Sharp Estate, 163 N.J. Super., 148, 150 (App.Div. 1978), aff'g in part 151 N.J.Super 579 (Ch.Div. 1977), this court construed Trimble as prohibiting "the continued application of the common law rule which bars an illegitimate child from inheriting from an intestate father." The court did not invalidate N.J.S.A. 3A:4-7 itself, preferring instead to abrogate the complementary common-law rule. Id. at 150-152. The effect of its decision, however, was to invalidate any attempt to limit an illegitimate child's right to inherit from one parent or the other.[1]
We therefore conclude that Trimble and Sharp, which antedate decedent's death, establish Marian's right to inherit from decedent, who is stipulated to be her natural father, even though she could not have enjoyed such a right under the statute in effect at the time of adoption.
Appellants maintain that Nickell v. Gall, supra, compels application of N.J.S.A. 3A:4-7 as it stood in 1948 and before its invalidation. In Nickell plaintiff had been adopted in 1929 by her aunt and uncle with the consent of her natural mother. In 1964 the natural mother died intestate and the Chancery Division rejected plaintiff's claim as an heir, holding that her statutory right of inheritance existing at the time of adoption (N.J.S.A. 9:3-7) had been cut off by the 1953 amendment (N.J.S.A. 9:3-30), declaring that a judgment of adoption "shall terminate" rights of inheritance from the natural parents. 90 N.J. Super. 539 (Ch.Div. 1966).
The Supreme Court reversed, noting the absence of any indication that the Legislature intended to affect the inheritance rights of prior adoptees. In fact, the court observed, the *19 1953 amendment expressly preserved already established rights. 49 N.J. at 190.
From Nickell appellants argue that not only the Adoption Law but also the law of intestacy must be applied as of the date of adoption, urging that the two must be read in pari materia. In our view, however, an analytical distinction must be maintained between the two subjects. Nickell addressed only the retroactive effect of an adoption law; it did not address an issue of distribution under the intestacy laws. Indeed, it noted the differing quality of each:
There is no substantial dispute that inheritance laws may be changed from time to time and that they speak only as of the time of the death. [Citation omitted].... [The 1953 amendment] was not a statute aimed at changing the general laws of descent and distribution but was an adoption statute designed primarily to prescribe modern procedures for adoptions along with their familial incidents and consequences. [Citation omitted]. [49 N.J. at 189].
The Nickell court relied in part on In re Holibaugh, 18 N.J. 229, 235 (1955), the pertinent language of which is as follows:
... Rules of inheritance are the "creatures of the municipal or civil law, and, except as to rights already vested, may be changed and modified at pleasure. * * The Legislature has power to change the course of descent, and such change will operate instantly upon all estates which may subsequently descend. The law existing at the time of descent cast governs the right to inherit. A mere expectation of property in the future is not considered a vested right, and hence `the rules of descent are held subject to change in their application to all estates not already passed to the heir by the death of the owner.' Cooley, Const. Lim. (6th ed.) 439." [Citations omitted]
We conclude that the trial court correctly applied the law of inheritance as it existed in this State at the time of Alexander Maislin's death. That law allowed inheritance by illegitimate children from either the natural mother or natural father. The right of inheritance did not conflict with the adoption laws of this State as they existed in 1948. We reject appellants' insistence that Trimble and Sharp are "no longer viable" after Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). The holding in Lalli is in no way inconsistent with that in Trimble.
Affirmed.
NOTES
[1] Effective September 1, 1978, after decedent's death herein, N.J.S.A. 3A:4-7 was repealed and replaced by provisions mandating identical rights as to each parent, as long as paternity is proven or the parents later married. N.J.S.A. 3A:2A-41.