309 S.E.2d 85

**Larry Dwaine KING and Pattie Sue King, his wife**

v.

**Opal RIFFEE, Individually and as Administratrix of the Estate of George W. Carney, et al.**

**No. 15806.**

Supreme Court of Appeals of West Virginia.

Nov. 14, 1983.

---

Hash & Benford and Lee F. Benford II, Ravenswood, for appellants.

Oliver D. Kessel, Ripley, for appellees.

Lawrence W. Hancock, Ravenswood, for Debbie Carney.

NEELY, Justice:

Larry Dwaine King was born out of wedlock to Evelyn King on 30 October 1942. By order of the Circuit Court of Lincoln County Larry was legally adopted by Chester Henry King and his wife, Hermie King, on 16 November 1955. Larry King alleges that his natural father was Denzil T. Carney, one of five children of George W. Carney. George W. Carney died intestate on 26 May 1978. Denzil T. Carney would have taken one-fifth of George W. Carney's substantial estate by intestate succession if he had not died before George W. Carney. The question presented on this appeal is whether Larry Dwaine King can now inherit that one-fifth portion from his alleged natural grandfather's estate.

This case was before the Court on an earlier occasion to determine whether an illegitimate child can be limited to inheritance from his mother under *W. Va. Code* 42–1–5 [1923]. Mr. King's case was among three cases consolidated for decision on that issue and in those cases we held that *W. Va. Const.* art. III, § 17 prohibits limiting illegitimate children to the maternal line for intestate inheritance because denying inheritance from their natural fathers discriminates invidiously against illegitimate children. *Adkins v. McEldowney,* 167 W.Va. 469, 280 S.E.2d 231 (1981). Consequently, it has already been decided that Mr. King's illegitimacy, standing alone, does not foreclose his right to inherit from his father's side of the family if he can prove who his father was.

The issue before us on this appeal, however, has nothing to do with Mr. King's status as an illegitimate child. Rather, the question before us now concerns the effect of Mr. King's adoption in 1955 upon his rights to inherit from his natural father. The decision in this case would be the same if Mr. King had been the *legitimate* son of Denzil T. Carney.

The problem in this case arises because at the time of Mr. King's alleged grandfather's death *W. Va. Code* 48–4–5 [1969] provided that adopted children inherit from their adopted parents but not from their natural parents. *W. Va. Code* 48–4–5 [1969] provides in pertinent part:

For the purpose of descent and distribution, from and after the entry of such order of adoption, a legally adopted child shall inherit from and through the parent or parents of such child by adoption and from or through the lineal or collateral kindred of such adopting parent or parents in the same manner and to the same extent as though said adopted child were a natural child of such adopting parent or parents, but such child shall not inherit from his or her natural parent or parents nor through their lineal or collateral kindred, ....

The circuit court held that the law of intestate succession in effect at the time of the death of Mr. King's grandfather on 26 May 1978 controls this case and that Mr. King is barred from inheriting from his natural grandfather. Mr. King appeals, contending that the law of intestate succession at the time of his adoption applies. We affirm.

West Virginia's law concerning intestate succession is entirely statutory. The question to be answered in this case concerns when rights under intestate succession statutes vest. The appellant argues that at the time of his adoption in 1955 the inheritance rights of adopted children were governed by Chapter 35, Acts of the Legislature, Regular Session, 1943. Section 3 of this statute provided in pertinent part:

[F]rom the date of such decree, the rights, duties, privileges and relations, theretofore existing between the child and his or her parent or parents, shall be in all respects at an end, excepting the right of inheritance; and that the rights, duties, privileges and relations between the child and his or her parent or parents by adoption, shall thenceforth in all respects be the same, including the right of inheritance, as if the child had been born of such adopting parent or parents in lawful wedlock, except only as otherwise provided in this article.

An adopted child's right to inheritance to which Section 3 refers is spelled out in detail in Section 5 of the same statute which provides in pertinent part:

[E]xcept that such child shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents, nor property coming from the lineal or collateral kindred of such adopting parent or parents by right of representation: *Provided,* That on the death of the adopting parent or parents and the subsequent death of the child so adopted without issue, the property of such adopting deceased parent or parents shall descend to or be distributed among the next of kin of such parent or parents, and not the next of kin of the child adopted: *Provided further,* That if such adopting parent or parents shall have another child or children, theirs by birth, then, and in that case, the adopted child shall share the inheritance with the child or children born to the adopting parent or parents, and in such case also, such adopted child and such child or children by birth shall respectively inherit from and through each other the property and estate of the adopting parent or parents, as if all had been children of such parent or parents born in lawful wedlock.

At the time of the appellant's adoption, legitimate children who were adopted inherited from their *natural* parents and, in addition, enjoyed a limited right to inherit from their adoptive parents. In 1959, however, *W.Va.Code* 48-4-5 [1943] was amended by Chapter 47, Acts of the Legislature, Regular Session, 1959, and the same code section was again amended in 1967 by Chapter 52, Acts of the Legislature, Regular Session, 1967. *W.Va.Code* 48-4-5 as amended in 1967 was in effect at the time appellant's alleged and grandfather died and that code section foreclosed adopted children from inheriting by intestacy from natural parents. (*W.Va.Code* 48-4-5 was again amended in 1969, but the amendment did not affect the substance of the statute). However, the same statute expanded the rights of adopted children to inherit through the lineal and collateral kindred of their adoptive parents and placed adopted children on almost exactly the same footing with regard to inheritance through their adopted families as natural children.

In the case of *Wheeling Dollar Saving & Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977) we interpreted *W. Va. Code* 48-4-5 [1969] as placing an adopted child on a complete par with natural children and held that any testamentary or inter-vivos trust governed by our laws, regardless of the date of its execution, was to be construed under *W. Va. Code* 48-4-5 [1969]. Therefore, adopted children were entitled to take under any trust provision that used the word "child," or "children," or any general words which were loosely, if not technically, synonymous with the words "child" or "children" including such words as "natural children," "descendants," "heirs," or "issue".

▪ Our laws concerning intestate succession are designed to effect the orderly distribution of property for decedents who lacked either the foresight or the diligence to make wills. The purpose of these statutes, then, is to provide a distribution of real and personal property that approximates what decedents would have done if they had made a will. Spouses and children enjoy a favored position under the laws of intestate succession because, on statistical average, they are the natural objects of most peoples' bounty. Nonetheless, if a person makes a will, he may dispose of his property howsoever he wants, as long as he provides for his spouse. In this regard, a person may change his will on a daily basis for twenty years. It is, however, the last validity executed will that disposes of the testator's estate. *Polen v. Baird*, 125 W.Va. 682, 25 S.E.2d 767 (1943); *See also, In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982).

▪ Just as no vested rights arise under a will until a testator dies, no vested rights arise under the laws of intestate succession until a testator dies. Since the laws of intestate succession are a legislatively created substitute for individual wills, the legislature may change the way in which property will descend or be distributed in cases of intestacy in the same way that an individual may change his will.

▪ This entire question was settled long ago by Blackstone when he wrote:

[I]t must first be observed, that by law no inheritance can vest, nor can any person be the actual complete heir of another, till the ancestor is previously dead. *Nemo est haeres viventis.* Before that time the person who is next in the line of succession is called an *heir apparent,* or heir *presumptive.*

2 W. Blackstone, *Commentaries* *152.

Modern authority still follows the analysis of Blackstone. Thus in the case of *McFadden v. McNorton*, 193 Va. 455, 69 S.E.2d 445 (1952) the Supreme Court of Appeals of Virginia held: "The legislature may, from time to time, change the course relating to descents and distributions. It may give to adopted children the right to share in the estate of their foster parents, and it may take this right away." *Id.* at 69 S.E.2d 449. The Virginia Court then went on to cite with approval 16 Am.Jur., Descent and Distribution, Section 12 which said:

Succession to intestate property is at the will of and subject to the sovereign political power of the state in which it is situated. The theory of the law is that any participation in the estate of a deceased person is by grace of the sovereign power which alone has any natural or inherent right to succeed to such property.... It follows that succession to intestate property is by force and operation of statute at the time of death and not by force and operation of contract or right, although there is some minority authority that there is no such right.

*Id.*

Appellant relies on the New Jersey case of *Nickell v. Gall*, 49 N.J. 186, 229 A.2d 511 (1967), and its progeny, *In re Estate of Maislin*, 181 N.J.Super. 14, 436 A.2d 539 (1981); *In re Estate of Avery*, 176 N.J.Super. 469, 423 A.2d 994 (1980); *In re Estate of Neuwirth*, 155 N.J.Super. 410, 382 A.2d 972 (1978), in which New Jersey courts have held that an adoption statute which terminated all relations between a parent and natural child did not apply to children adopted prior to the statute. That reliance

is misplaced because *Nickell* is easily distinguishable from the case *sub judice.*

*Nickell* involved the New Jersey Supreme Court's interpretation of a newly enacted adoption statute. The court noted that it "was not a statute aimed at changing the general laws of descent and distribution ...." This was significant because "There is no substantial dispute that inheritance laws may be changed from time to time and that *they speak only as of the time of the death.*" *Id.* 229 A.2d at 513 (emphasis added). The opinion went on to note the liberal language of the statute's saving clause which read in part that the statute would not be deemed "to invalidate or otherwise affect any adoption granted or any right or duty vested or established under any law heretofore in effect." Thus, the statute in question in *Nickell* is not analogous to the relevant law in West Virginia which explicitly did change the rule of intestate succession and contained no similar saving clause.

Furthermore, the *Nickell* case is factually different from the situation with which we are presented. In *Nickell,* the natural mother signed an adoption decree which stated that all relations between the child and her natural mother would end "excepting the right of inheritance." The Supreme Court of New Jersey noted that the existence of that language in the decree may have led the mother who subsequently died intestate to believe it was unnecessary to prepare a will. *Id.* at 514. There is no evidence in this case that George Carney intended any portion of his estate to pass to Larry Dwaine King. Certainly, there are no explicit statements to that effect and Mr. Carney certainly cannot be deemed to have relied on any legal statement to that effect.

■ The appellant urges us to hold that the statute concerning inheritance rights of adopted children in effect at the time of the adoption should control. Although such a rule would benefit appellant because his alleged grandfather was a man of some property, as a general proposition it would cause substantial prejudice to adopted children as a class. In the last forty years,

each amendment to our adoption laws has favored the position of adoptive children and broadened the rights of those children to share in the property of their adoptive families. In the normal course of events, children are usually put up for adoption either because they are illegitimate or because their families find it difficult to care for them. Although the appellant in this case apparently can prove his descent, most illegitimate children are not so fortunate. Consequently, adopted children as a class are far better off being governed by our current statutes on intestate succession than by earlier statutes. In most cases adoptive parents have much more property to devise or bequeath than natural parents.

■ One final consideration instructs our decision today: title to real property *automatically descends* to heirs by operation of law in the event of intestacy. If we were now to hold that a statute on intestate succession not in force and effect at the time of the death of ancestors controls the descent of real property, long settled titles to real property might be called into question and opportunities presented for the making of great mischief.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Jackson County is affirmed.

Affirmed.