IN THE MATTER OF THE ESTATE OF CASTELOW
CALLOWAY, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted December 18, 1985—Decided January 8, 1986.

Before Judges KING, O'BRIEN and SIMPSON.

*John H. Watson, Jr.,* attorney for appellant Wilhelmena Brown (*Michael B. Blacker,* of counsel).

*Richard Silver,* attorney for respondent William Calloway.

The opinion of the court was delivered by

SIMPSON, J.A.D.

Wilhelmena Brown appeals from a November 13, 1984 order of the Law Division setting aside her letters of administration for the estate of Castelow Calloway issued by the Union County Surrogate on June 7, 1982, and granting letters of administration to decedent's father, William Calloway. The decedent, who was never married, died intestate on March 23, 1982. Ms. Brown contends that decedent was the father of her daughter, Scherrie Tamika Washington, who was born June 15, 1975, and that "Tamika" is entitled to the entire intestate estate under *N.J.S.A.* 3B:5-4a., and its predecessor statutes. William Calloway denies that his son was Tamika's father, and, if correct, he

would therefore inherit the estate pursuant to *N.J.S.A.* 3B:5–4b. It is undisputed that the entitlement to letters of administration and the entire intestate estate depends solely upon whether Tamika is determined to be the illegitimate daughter of Castelow Calloway in the eyes of the law. In a letter opinion of September 18, 1984, following a bench trial, the Law Division judge concluded that Ms. Brown had not overcome the strong, but rebuttable, presumption that Tamika was the legitimate daughter of Leroy Washington—to whom Ms. Brown was married at the time the child was conceived. The judge relied upon *B. v. O.*, 50 *N.J.* 93, 97 (1967), and *Sarte v. Pidoto*, 129 *N.J.Super.* 405 (App.Div.1974)—the latter case holding that in a filiation proceeding, clear and convincing evidence is required to overcome the presumption of legitimacy of a child. The judge also cited *N.J.S.A.* 3B:5–10, to the effect that for purposes of intestate succession, a child born out of wedlock is a child of its natural father provided that paternity is established after the father's death by clear and convincing proof. We initially note, however, that this statute was not effective until May 1, 1982 (although its predecessor, *N.J.S.A.* 3A:2A–41b.(2), was similarly worded).

Wilhelmena Brown married Leroy Washington on June 12, 1954, in Florida and they had at least six children. In 1964 they separated and Ms. Brown moved to New Jersey. She obtained a "no fault" divorce (18 months separation) from Leroy Washington in New Jersey on April 23, 1975, pursuant to *N.J.S.A.* 2A:34–2d., and Tamika was born less than two months later. Based upon her weight at birth, it was clear that Tamika was a full-term baby—and there was a conflict of testimony as to whether Ms. Brown first met the decedent in the summer of 1974 (and had sexual intercourse with him in September when she said she conceived), or around Thanksgiving as William Calloway's witnesses asserted. It is not clear if the trial judge resolved this conflict against Ms. Brown, but his analysis of the proofs was as follows:

The testimony of [Ms. Brown] was to the effect that at the time of the conception of [Tamika], her husband and she were separated and had been for many years. She claims that she was dating the decedent and that the child was conceived by him. She produced a photograph and greeting card album to demonstrate that the decedent called himself "daddy" and that he openly acknowledged the child as his own. She stated that the decedent sent her money regularly for the support of the child. She produced the employer of the decedent who testified that she had seen the plaintiff, the child and the decedent together and that the decedent told her that the child was his and that he loved her very much. The other proofs were from the neighbors and witnesses who testified that the decedent would come to [Ms. Brown's] house every week, shopped together, helped with the child's homework and wathced [sic] T.V. together. No other proofs were adduced that are noteworthy here.

The defense rests essentially on the presumption and that [Ms. Brown] failed to overcome the presumption against the legitimacy of the child through the marriage of Wilhelmena Brown and Leroy Washington.

The contestants, namely the relatives of the decedent, presented testimony that would tend to show that the child was conceived at a time prior to that time claimed by [Ms. Brown]. They further produced copies of applications by "Willie Mae Washington" for welfare which contradict certain testimony of [Ms. Brown].

At the time of trial, Tamika was eight years old. She identified a picture of the decedent and told the judge he visited her a lot and that she called him "Daddy." William Calloway confirmed this, as well as the fact that the decedent sent Ms. Brown support payments for Tamika. Tamika was also mentioned in a January 19, 1980 Abyssinian Baptist Church obituary as a surviving granddaughter of William Calloway's late wife, Nellie. Decendent's brother, Aaron Calloway admitted that Castelow told him Tamika was his child—and Aaron signed a statement for social security purposes verifying the father-daughter relationship. In short, although the trial judge did not specifically so find, the record is clear that the decedent provided support for Tamika and there was a mutually acknowledged father and child relationship.

The harsh common law doctrine that an illegitimate child was *nullius filius,* and inherited from neither mother nor putative father, has been abrogated in New Jersey. 7A *N.J. Practice* (Clapp and Black, Wills and Administration), § 1573 (Rev.3rd Ed.1984); *In re Maislin's Estate,* 181 *N.J.Super.* 14, 17–18

(App.Div.1981). The New Jersey Parentage Act, *N.J.S.A.* 9:17–38 *et seq.*, established the principle that the parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents. The Parentage Act provides at *N.J.S.A.* 9:17–43a., that "[a] man is presumed to be the natural father of a child if: ... (5) while the child is under the age of majority, he provides support for the child and openly holds out the child as his natural child; ..." The Parentage Act also recognizes the problem of conflicting presumptions and provides at *N.J.S.A.* 9:17–43b., c. and d.:

> b. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court order terminating the presumed father's paternal rights or by establishing that another man is the child's natural or adoptive father.

> c. Notwithstanding the provisions of this section to the contrary, in an action brought under this act against the legal representative or the estate of a deceased alleged father, the criteria in paragraphs (4) and (5) of subsection a. of this section shall not constitute presumptions but shall be considered by the court together with all of the evidence submitted. The decision of the court shall be based on a preponderance of the evidence.

> d. In the absence of a presumption, the court shall decide whether the parent and child relationship exists, based upon a preponderance of the evidence.

From the foregoing, it appears that any presumption that Tamika is the natural daughter of Leroy Washington (common law presumption of legitimacy, or effective "presumption" because of clear and convincing proof required to establish putative paternity under *N.J.S.A.* 3B:5–10, or its predecessor *N.J.S.A.* 3A:2A–41b.(2)), would be offset by the cited provisions of *N.J.S.A.* 9:17–43, and the ultimate judicial finding of fact would only be required to be supported by a preponderance of the evidence. We realize, of course, that the Parentage Act was not effective until May 20, 1983. We believe, however, that the rationale is equally applicable to the pre-Parentage Act situation under review. In other words, Castelow Calloway's support of Tamika and his holding her out to his father and brother

as his daughter—coupled with the mutually acknowledged parent-child relationship—are sufficient not only to rebut any presumption that Tamika was the daughter of Leroy Washington, but to establish that for purposes of intestate succession she was the daughter of decedent.

Reversed and remanded for further appropriate proceedings. We do not retain jurisdiction.