**Elba MORALES on Behalf of Linnette MORALES, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Appellee.**

No. 87–5167.

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 1987.

Decided Nov. 18, 1987.

482

Michaelene Loughlin (argued), Essex–Newark Legal Services, Seton Hall Law School, Hispanic Clinic, Newark, N.J., for appellant.

Samuel A. Alito, Jr., U.S. Atty., Christine Piatek (argued), Sp. Asst. U.S. Atty., Newark, N.J., for appellee.

Before BECKER and SCIRICA, Circuit Judges, and FARNAN, District Judge[*]

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal from an order of the district court granting summary judgment for the Secretary of Health and Human Services ("the Secretary"), thereby affirming the Secretary's denial of Social Security survivor's benefits to Linnette Morales on the ground that she had not established that Herminio Santiago, whose insured status is the source of her potential benefits, was her father. At the threshold this appeal presents a choice of law question: what law furnishes the standard of proof of paternity? Once we determine that standard, we must then measure the record against it to decide whether the Secretary's denial of benefits is supported by substantial evidence.

For the reasons that follow, we determine that the applicable law is the New Jersey Parentage Act, N.J.S.A. §§ 9:17–38 to 9:17–59. We conclude that under the standard established by the Parentage Act, the Secretary's decision is not supported by substantial evidence. Because there appears to be no additional evidence that could be developed by another hearing, we reverse and remand with direction to the

[*] The Honorable Joseph Farnan, United States District Judge for the District of Delaware, sitting by designation.

district court to direct the Secretary to award benefits.

## I. FACTS AND PROCEDURAL HISTORY

Appellant, Elba Morales, claims that her daughter, Linnette, was improperly denied Social Security survivor benefits following the death of Linnette's putative father, Herminio Santiago. Elba Morales began living with Herminio Santiago in 1973 in Puerto Rico. She gave birth in 1973 to a son, Alexander, whose paternity Santiago acknowledged in writing. The couple later left Puerto Rico with Alexander for Newark, New Jersey, where they continued to live together until March, 1976. At the time Elba and Herminio stopped living together, Elba was approximately six months pregnant, and on June 23, 1976 she gave birth to a daughter, Linnette.

At the time of Linnette's birth, Santiago, whom appellant's counsel at an administrative hearing acknowledged was a drug dealer and "somewhat of a fugitive." J.A. at 26, was in Puerto Rico, but, according to appellant, he returned shortly after her birth, bringing a cradle and other gifts for Linnette. Santiago was murdered in Newark, New Jersey, on November 4, 1977. On July 20, 1982, appellant filed an application for Social Security survivor's benefits for her two children, Alexander Santiago and Linnette Morales. On November 17, 1982, the Social Security Administration approved Alexander's application and rejected Linnette's application. Appellant did not seek administrative review of the denial of Linnette's application, but filed a second application on August 3, 1983. The Social Security Administration denied the second application and appellant appealed this de-

nial. A hearing was held before an administrative law judge on February 2, 1984. The ALJ did not articulate the standard for determining paternity, but denied the claim, relying on the lack of written acknowledgment of paternity or of evidence that Santiago was living with or contributing to the support of Linnette at the time of his death. Upon affirmance of the ALJ's decision by the Health and Human Services Appeals Council on October 11, 1984, the denial became a final decision of the Secretary.

Appellant timely appealed the Secretary's final decision to the district court, which affirmed it. *Morales v. Heckler*, Civ. No. 84–5356, slip op. (D.N.J. Feb. 2, 1987) [Available on WESTLAW, DCT database]. The district court applied a "clear and convincing" standard of paternity and found substantial evidence to support the Secretary's decision. *Id.* at 25. It is from the decision of the district court that the present appeal lies.

## II. CHOICE OF LAW

■ The Social Security Act provides survivor's benefits for the child of a deceased fully insured wage earner. 42 U.S.C. § 402(d) (1982). Appellant claims that Linnette Morales qualifies as the child of a deceased fully insured wage earner, Herminio Santiago, under Section 216(h)(2)(A) of the Act, now codified at 42 U.S.C. § 416(h)(2)(A) (1982). That section provides, in relevant part, that children will be entitled to survivor's benefits if they can demonstrate that they would inherit personal property from the deceased wage earner under the intestacy laws of the domiciliary state "at the time of his death." [1] 42 U.S.C. § 416(h)(2)(A) (1982). The parties

---

1. Appellant also claims that Linnette qualifies as the child of Herminio under a second provision of the Act. Under 416(h)(3), if the applicant fails to meet the 416(h)(2)(A) requirements, the applicant:

   shall nevertheless be deemed to be the child of such insured individual if:

   \* \* \* \* \* \*

   (C) in the case of a deceased individual—

   \* \* \* \* \* \*

   (ii) such insured individual is shown by evidence satisfactory to the Secretary to have

been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died. 42 U.S.C. § 416(h)(3)(C)(ii) (Supp. III 1985).

Because we hold that Linnette Morales was entitled to survivor's benefits under section 416(h)(2)(A), we need not consider whether the Secretary's decision denying benefits was supported by substantial evidence under section 416(h)(3)(C)(ii).

agree that Herminio Santiago was domiciled in New Jersey at the time of his death, and thus that New Jersey law should be applied. The relevant provisions of New Jersey law have changed substantially, however, and the parties disagree over which New Jersey law should apply— the law in effect at the time of his death or the law that was in force when the claimant's application was filed.

Courts that have interpreted § 416(h)(2)(A) have reached varying conclusions on whether the section is a pure choice of law provision which determines simply that the law of the state of the decedent's domicile at the time of death applies, *see, e.g., Owens v. Schweiker,* 692 F.2d 80 (9th Cir.1982); *Cox v. Schweiker,* 684 F.2d 310 (5th Cir.1982), or whether the provision also establishes that the law of that state in effect at the *time* of death also applies, *see, e.g., Gonzales v. Harris,* 514 F.Supp. 995, 996 (E.D.Cal.1981); *Ramon v. Califano,* 493 F.Supp. 158, 159 (W.D.Tex.1980); *Allen v. Califano,* 452 F.Supp. 205, 209 (D.Md.1978). The Court of Appeals for the Ninth Circuit in *Owens* read "at the time of his death" in § 416(h)(2)(A) as simply a choice of law provision that determines which state's law applies, but which does not fix the time at which the law of that state must apply.[2]

In *Adens v. Schweiker,* 773 F.2d 545 (3d Cir.1985), we declined to follow *Owens* and *Cox.* In *Adens,* the putative father died in 1976 domiciled in Pennsylvania. The panel stated that because the wage earner was domiciled in Pennsylvania, it was required to apply the same intestacy law that Pennsylvania courts would use. The Pennsylvania intestacy statute in effect at the time of

decedent's death had been found unconstitutional in 1977, because it permitted illegitimate children to inherit from their mothers but not their fathers. The Pennsylvania intestate law that replaced the unconstitutional law allowed inheritance from both parents upon a showing of paternity, but contained a clause that explicitly prohibited retroactive application of the law. 20 Pa.Cons.Stat.Ann. § 2107 (Purdon 1978). The panel held in *Adens* that "[b]ecause the Pennsylvania courts make their determinations based on the law existing at the time of death, the Secretary must do likewise." 773 F.2d at 547. It thus applied the statute in existence in 1976, but used the rule of "neutral extension" to remove the unconstitutional language while allowing the remainder of the statute to stand.

Appellant argues that *Adens* is distinguishable because of the non-retroactivity clause in the Pennsylvania statute. She submits that the *Adens* court looked to the statute in effect at the time of the decedent's death only because the non-retroactivity clause prevented application of the later law. Because no non-retroactivity clause exists in the pertinent New Jersey statutes, appellant submits, we are not bound to apply the law existing at the time of death, as was the *Adens* court.

Appellant contends that the date of *application* for survivor's benefits should control.[3] She urges us to adopt the approach of *McBride v. Heckler,* 619 F.Supp. 1554 (D.N.J.1985), where the district court applied the intestacy law in effect at the time of the hearing on the application for survivor's benefits. *McBride* distinguished *Adens* on the ground that the New Jersey statute's lack of a non-retroactivity clause

**2.** The *Owens* court directed the Secretary to apply the Washington intestacy law existing at the time of the Secretary's decision on the application. The court did not examine whether the Washington Supreme Court would have applied current state intestacy law or the law in effect at the time of the wage earner's death.

**3.** The parties offer different arguments as to the correct date of the application. Appellant argues that the application acted upon here was the second application, which was filed on August 3, 1983. The Secretary maintains that the applications concerned the same issue and

should be treated as one application, thus the application date should be the date of the first application, July 20, 1982. The reasons offered by the Secretary include: 1) the Social Security Administration treated the second application as a reconsideration; and 2) the ALJ's decision was a determination on the 1982 application. However, we do not reach this issue because we determine that the inquiry should focus on which date the courts of the state of the decedent's domicile would look to to determine the applicable law.

made *Adens* inapposite and concluded that New Jersey courts would find the applicable statute to be the one in effect at the time of the application. The court reached its conclusion about New Jersey law because Social Security survivor's benefit cases involve no reliance on earlier law, because the legislature would not want the court to deny illegitimate children rights, and because New Jersey courts have shown a "temperate attitude" toward illegitimate children. 619 F.Supp. at 1559.

The Secretary argues that *McBride* should not be followed because it is contrary to two basic "principles of New Jersey law": that the statute existing at the time of decedent's death controls,[4] and that statutes should be applied prospectively only.[5] The Secretary argues that we should follow *Adens* in our application of New Jersey law here, because the court in *Adens* decided not only that the statute establishes which state's law governs, but also that the statute in effect at the time of death should be applied.

We agree with the Secretary that we must follow *Adens*. However, we read *Adens* to hold that, where a state's law has changed between the time of death and the conclusion of the Social Security survivor's benefits process, the court must determine the time at which the *state* fixes intestate rights and must apply the statute that would be applied by that state's courts. We reach this conclusion for two reasons. First, the explicit language of *Adens* rejects *Cox* and *Owens*, which did not look to when the courts of the state of domicile fix intestate rights. 773 F.2d at 547.[6] Instead, *Adens* held that "Pennsylvania law fixes intestate rights at the time of the decedent's demise. Because the Pennsylvania courts make their determinations based on the law existing at the time of

death, the Secretary must do likewise." Id. at 547.

Second, as a logical matter, the *Adens* court must have decided the issue this way in order to have reached its ultimate decision. The non-retroactivity clause would only have prevented the *Adens* court from applying the later law if the court had first decided that it was bound to apply the law that the state court would apply. The non-retroactivity clause was relevant only because the court had already determined that it must look to when the courts of the state of domicile fix intestate rights. In sum, under the explicit language and logical import of *Adens*, the appropriate inquiry must examine when the courts of the state of the wage earner's domicile at death fix intestate rights.

## III. NEW JERSEY LAW

■ Following *Adens*, we must look to the law New Jersey courts would apply to fix intestate rights with respect to a decedent who died on that date. The law of intestacy in New Jersey has changed considerably over the relevant period in this case and the parties differ over which New Jersey law is applicable.

In the event of intestacy, the common law rule did not allow an illegitimate child to inherit from either parent. *See In re Estate of Calloway*, 206 N.J.Super. 377, 380–81, 502 A.2d 1169, 1170–71 (App.Div. 1986) (citing *In re Estate of Maislin*, 181 N.J.Super. 14, 17–18, 436 A.2d 539, 540–41 (App.Div.1981)). Prior to 1978, the New Jersey intestacy statute, N.J.S.A. 3A:4–7, permitted illegitimate children to inherit property by and through the mother only. In 1977, the United States Supreme Court held that a similar statute violated the fourteenth amendment's guarantee of equal protection. *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31

---

4. *See Nickell v. Gall*, 49 N.J. 186, 229 A.2d 511 (1967); *In re Will of Holibaugh*, 18 N.J. 229, 113 A.2d 654 (1955).

5. *See Alongi v. Schatzman*, 57 N.J. 564, 274 A.2d 33 (1971); *Nickell*, 49 N.J. 186, 229 A.2d 511 (1967); *Kopczynski v. County of Camden*, 2 N.J. 419, 66 A.2d 882 (1949):

6. The *Adens* court also stated that "[t]he Secretary's regulations have adopted the same interpretation of the Act as we have. The regulations provide that 'If the insured is deceased, we look to the laws that were in effect at the time the insured worker died.'" 773 F.2d at 547 n. 2 (citation omitted).

(1977). The unequal treatment of illegitimate children under New Jersey law was similarly held unconstitutional by the New Jersey court in *In re Estate of Sharp,* 151 N.J.Super. 579, 377 A.2d 730 (Ch.Div.1977), *modified,* 163 N.J.Super. 148, 394 A.2d 381 (App.Div.1978). In response to *Sharp,* the New Jersey legislature enacted legislation effective September 1, 1978 amending the intestacy provision to allow an illegitimate child to inherit, but only upon "clear and convincing" proof of paternity. P.L.1977, c. 412, § 44; N.J.S.A. 3A:2A–41. In 1983, the New Jersey legislature again amended the illegitimacy statute by enacting the 1983 New Jersey Parentage Act, P.L.1983, c. 17, § 1; N.J.S.A. 9:17–38 to 9:17–59. The Parentage Act, which became effective on March 19, 1983, established presumptions of paternity, and required that, "[i]n the absence of a presumption, the court shall decide whether the parent and child relationship exists, based upon a *preponderance of the evidence.*" N.J.S.A. 9:17–43d (emphasis added).

Thus, we must determine whether New Jersey would apply the "clear and convincing" standard existing at the time of Herminio Santiago's death in November 1977, or the current "preponderance of the evidence" standard of the Parentage Act.

In *In re Estate of Calloway,* the court determined, on facts closely analogous to those presented by Elba's appeal, that the Parentage Act applied to a determination of paternity even where the putative father died intestate prior to the effective date of the Act. The putative father, Castelow Calloway, died on March 23, 1982, at a time when the "clear and convincing" standard was in effect.[7] The court noted that the Parentage Act established the principle of equal application of parental status regardless of marital relationship and applied the later standard. The court stated that "[w]e realize, of course, that the Parentage Act was not effective until May 20, 1983. We believe, however, that the rationale is equally applicable to the pre-Parentage Act situation under review." Id. 206 N.J.Super. at 381, 502 A.2d at 1171. The court then applied the Parentage Act's preponderance of the evidence standard and held the evidence sufficient to establish paternity for the purpose of intestate succession. Thus, in a determination of paternity, New Jersey has applied the Parentage Act to determine paternity for intestacy where the decedent died before the effective date of the statute.

The application of the Parentage Act in *Calloway* is consistent with the development of New Jersey law regarding intestate succession, a development that has demonstrated an increasingly "temperate attitude" toward illegitimate children. *McBride,* 619 F.Supp. at 1559. As the *McBride* court noted, *Sharp* first recognized the legislature's broad intention to remove discriminatory obstacles to the ability of illegitimate children to inherit under the state intestacy statutes. The *Sharp* court stated that: "In this era of expanding legislative condemnation of discriminatory practices, including the forbidding of discrimination on the basis of ancestry under the Law Against Discrimination, the court believes that the Legislature would not want the court to deny to illegitimate children the rights granted under [the intestacy statute]." 151 N.J.Super. at 586, 377 A.2d at 733 (citations omitted). *See also In re Estate of Maislin,* 181 N.J.Super. 14, 436 A.2d 539 (App.Div.1981).

Based upon the foregoing discussion, we conclude that New Jersey would apply the Parentage Act to determine Linnette Morales' paternity for the purposes of intestate succession, and thus that the preponderance of the evidence standard must be

---

7. In *Calloway,* the mother of Scherrie Tamika Washington claimed that despite the fact that she (the mother) was married to another man at the time of conception, Castelow Calloway was the father of Tamika, and thus that Tamika was entitled to her father's entire estate. The mother presented evidence of financial support by Calloway, testimony that the mother and Calloway spent time together frequently, and testimony that Tamika called Calloway "daddy." The defense relied on contradictory welfare documents filed by the mother and on the mother's alleged inability to meet the clear and convincing standard. *Calloway,* 206 N.J.Super. at 380, 502 A.2d at 1170.

applied to determine whether Linnette qualified for survivor's benefits.

## IV. SUBSTANTIAL EVIDENCE

■ For us to affirm the Secretary's determination, there must be substantial evidence that appellant failed to establish that "the parent and child relationship exists, based upon a preponderance of the evidence." N.J.S.A. 9:17–43d. We turn to an examination of the record.

Appellant argues that the record indicates that Herminio Santiago is the father of Linnette Morales. Appellant points to several uncontradicted pieces of evidence establishing Santiago's paternity. First, appellant herself testified that she and Santiago lived together from 1973 until roughly the sixth month of her pregnancy with Linnette; that she did not have sexual relations with other men during the period of conception; that Santiago was the father; and that Santiago promised he would formally acknowledge Linnette, but never got around to it.

In addition to her testimony, appellant points to several other undisputed pieces of evidence. First, Santia Rodriguez and Daniel Santiago (the mother and brother of Herminio Santiago) signed an affidavit indicating that "all the family was aware" Herminio was the father. Second, appellant points to the letter from Santia Rodriguez to appellant stating that "I know that she [Linnette] is his [Herminio's] because you [Elba] used to live here in Puerto Rico and used to live near me and you were pregnant when you left...." Third, appellant points out that she listed Santiago's name as the father on Linnette's birth certificate and in the records of the Essex County Welfare Board. Fourth, appellant introduced a photograph of Herminio Santiago holding Linnette and Alexander on his knee. In sum, Elba clearly presented to the ALJ and district court substantial evidence of Santiago's paternity.

Appellant also introduced uncontradicted evidence that Santiago supported Linnette.

Although evidence of a parent-child relationship, not support, is required under § 9:17–43d of the Parentage Act, appellant's evidence of support further strengthens her paternity claim. Appellant testified, and the Secretary did not dispute, that Santiago bought a crib and other items for Linnette soon after her birth. Further, appellant testified that Santiago brought approximately $50 to her at roughly two week intervals for the support of the children.

The Secretary argues on appeal that the support money could have been solely for the support of Alexander, Santiago's acknowledged son, but presented no evidence to support this contention. The Secretary also argued that no evidence of the $50 payments exists outside of appellant's testimony. However, it is unlikely that such payments, particularly when made by a conceded drug dealer, would have resulted in receipts or cancelled checks. *Cf. McBride*, 619 F.Supp. at 1557 (recognizing paternity where no written evidence of biweekly payments existed). The Secretary further contends that appellant's testimony regarding the $50 payments is contradicted by her failure to report the payments to the Welfare Board. However, this failure is easily explained by her incentives not to receive lowered welfare benefits or to lead the authorities to Herminio's whereabouts.[8] In short, the record is uncontradicted that Herminio Santiago provided some, if not a great deal of support for Linnette.

Against this evidence of paternity (and hence the right to intestate succession) the Secretary presented no evidence. Instead, the Secretary attempted only to dispute appellant's statements of support from Herminio Santiago and to call appellant's other evidence into question. The Secretary argued that appellant signed a "Statement of Complaint" with the Social Security Administration on July 20, 1982 in which she stated that "[Santiago] did not live with Linnette or support her between 11/76 and 11/77." This in large part was the basis of

---

8. If appellant had reported Santiago's support to the Welfare Board or enabled the Welfare Board to locate him, the welfare benefits could have been reduced. *See generally* 45 C.F.R. § 233.10–.20 (1986) (requiring state programs to account for support payments and income).

the ALJ's holding. The ALJ weighed this written statement against the later statements of appellant and found the written statement more likely true.

The Secretary disputed appellant's other arguments by asserting that Santiago and appellant had never married; that appellant, rather than Santiago, placed Linnette's name on documents; that Santiago refused to acknowledge paternity formally; and that, in fact, Santiago's refusal to acknowledge Linnette was to *avoid* having to support her. Ignoring appellant's own testimony, the Secretary also submits that the only *factual* evidence presented by appellant was the affidavit of Rodriguez and Santiago. Although the Secretary has challenged appellant's evidence, he has failed to introduce any evidence whatsoever that could lead a factfinder to believe that Santiago is not the father.

As we noted above, the ALJ considered whether Santiago had acknowledged Linnette, or whether he was living with her or contributing to her support at the time of his death. But neither written acknowledgment of paternity, nor living with and supporting the child are required under the New Jersey Parentage Act, and the Act requires only proof of paternity by a preponderance of the evidence. Under the statute, simple evidence of paternity is sufficient to qualify Linnette for survivor's benefits. The district court, in affirming the ALJ, applied the clear and convincing standard.

The Supreme Court has defined substantial evidence to be "such relevant evidence as a reasonable mind might accept to support a conclusion," and as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Elba Morales' statement of non-support to the Social Security Administration, standing alone, is a scintilla at best.

Moreover, we are required to examine the "entire record" when reviewing for substantial evidence. *Van Horn v. Schweiker*, 717 F.2d 871, 873 n. 1 (3d Cir.

1983) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981) ("appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence")); *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981) (" 'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record."). In *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983), we noted that "[a] single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence...." The single statement of non-support made by appellant is overwhelmed here by the evidence of paternity.

We hold that, when reviewing the record in its entirety under the applicable preponderance of the evidence standard, the Secretary's denial of survivor's benefits is not supported by substantial evidence. Because the record is fully developed and there is no reason to believe that further evidence could be developed, we will not direct that an additional hearing be held. We therefore will reverse the judgment of the district court and remand with the direction to the district court to remand to the Secretary with a direction to award benefits to Linnette Morales.